## Eric W. Guth, Plaintiff in Error, v. Elmer E. Vaughan, Defendant in Error.

### Gen. No. 27,865.

RELEASES—*release of disputed personal injuries claim as bar to action against physician for malpractice.* An action for malpractice against a physician who treated plaintiff for a broken leg received in an automobile collision is barred by a release given to the driver of the automobile for a stated consideration in full accord and satisfaction of a "disputed claim" growing out of the injuries in question, which released the driver from "any and all actions, cause or causes of actions, claims and demands, for, upon, or by reason of any damage, loss, injury or suffering" suffered or to be suffered in consequence of such accident and injury.

Error by plaintiff to the Circuit Court of Cook county; the Hon. DONALD L. MORRILL, Judge, presiding. Heard in the third division of this court for the first district at the October term, 1922. Affirmed. Opinion filed December 26, 1923.

CHARLES C. SPENCER and ARTHUR A. HOUSE, for plaintiff in error; NATHAN E. UTT, of counsel.

EDWARD W. RAWLINS, for defendant in error.

MR. PRESIDING JUSTICE TAYLOR delivered the opinion of the court.

On October 22, 1918, the plaintiff, Eric W. Guth, brought suit in the circuit court of Cook county against the defendant, Elmer E. Vaughan, for malpractice. There was a trial by the court with a jury, and at the close of all the evidence a directed verdict and judgment in favor of the defendant. This appeal is therefrom.

The declaration contains three counts and an amendment. Substantially, it charges that the plaintiff on July 6, 1918, employed the defendant, Dr. Elmer E. Vaughan, to treat him for a broken leg; that the defendant accepted and undertook the employment as physician and surgeon but that he "so carelessly and unskilfully set, reduced and treated the said broken and fractured leg that by and through the want of skill, care and wrongful acts  *  *  *  the plaintiff became and has ever since and will forever remain greatly reduced, weakened and injured"; that said injury was prolonged, increased and aggravated by the unskilful conduct of the defendant as aforesaid; that the plaintiff was at all times in the exercise of ordinary care and was injured without any fault or negligence on his part. The *ad damnum* is $20,000.

The defendant filed a plea of the general issue and a special plea setting up the statute of limitations.

The theory of the defendant is that (1) a certain release given by the plaintiff to one Florsheim, whose automobile struck him and caused the injuries on account of which surgical treatment became necessary, is a bar to the plaintiff's action against the defendant, Dr. Vaughan, and (2) that there is in the record no competent evidence to sustain the charges of negligence made against the defendant.

The theory of the plaintiff is (1) that the release

given to Florsheim did not release the defendant as there was no evidence tending to show that the plaintiff was injured by the negligence or wrongful act of Florsheim; that the injury may have been the result of a mere accident; that Florsheim was, therefore, not a joint tort-feasor with the defendant and was not in fact a tort-feasor at all, and (2) that he, the plaintiff, introduced sufficient evidence of the defendant's unskilfulness to make out a cause of action and that it should have been submitted by the trial judge for the determination of the jury.

The evidence showed substantially the following: On July 6, 1918, the plaintiff, Eric W. Guth, who was then twenty-one years of age, while crossing Sheridan Road on Roscoe street in the City of Chicago, at about 6:30 in the evening, was struck by an automobile belonging to one Florsheim. He was taken to the Chicago Union Hospital and put in charge of the defendant, Dr. Elmer E. Vaughan. He was suffering from a fractured femur of the right leg. The doctor took him to the operating room and put on a temporary splint and four or five days later put on what is called an ambulatory splint, which the plaintiff wore until the middle of August, 1918. The ambulatory splint was manufactured by one Sieman and was put on by him and the defendant together. It is a complicated pneumatic mechanism used for the purpose of keeping the parts of the fractured bones in apposition and the leg itself in proper condition during recovery.

The plaintiff walked on the injured leg in July, 1919, about a year after the accident, but then only with the use of crutches. The first work he did after the accident was on March 29, 1920. He has been working ever since and his leg has been improving ever since he left the Montrose avenue hospital, and now, according to his testimony, he walks on it pretty well.

Dr. Ross, who was called to attend the plaintiff on October 5, 1918, testified that he found the bones of

the femur were overlapping about two inches at an angle; that he and Dr. Moje, opening up the leg, chiseled the bones apart and "cut away the callous formation between them and squared the ends of the bones and took a piece about six inches long from the shin and fitted it into the femur and fastened the bones together with kangaroo tendon, sewed up the wound and put on splints"; that they did not get a satisfactory healing; that the parts were so emaciated and that the circulation was so poor that later on, to stimulate healing, they opened up the leg and "refurbished off the ends of the bones" and fastened them together with two ivory splints and wire and put on rubber bands at the top of the thigh to hold the blood in the thigh for certain periods of time in order to bring about a healing; that the second operation turned out all right; that the bones healed end to end; that the patient was under his supervision from October 5, 1919, until June 3, 1920. Dr. Ross further testified that an X-ray plate of the leg as it was just after it was broken showed merely a simple fracture which was neither compound nor comminuted. He was shown other X-ray pictures which were taken before he himself operated and they showed, he testified, that the fracture of the femur had not been reduced; had not been set; that the ends of the bone were overlapped about two inches; that they showed the condition of the leg at the time he operated in October, 1918. He further testified, in answer to a hypothetical question which purported to contain the substance of the evidence, that he did not think ordinary care and skill were used by the defendant; that such a fracture as the plaintiff suffered ought to heal in about six weeks to two months; that when he first examined the plaintiff it was his opinion that the plaintiff would never thereafter have the use of the right leg.

The defendant, Dr. Vaughan, testified that when the plaintiff was brought to the hospital on July 8,

1918, suffering from a fractured femur, he took him to the operating room and fitted a straight board splint on the leg and kept up a moderate degree of extension of the leg and kept the plaintiff in bed for four days; that he caused extension to be made on the foot until he could bring the ends of the bone together; that on July 10, 1918, he, together with one Sieman, fitted an ambulatory splint to the leg; that that splint was so arranged that by means of a key the extension of the leg could be increased or decreased; that the extension was continued until he was sure he had proximated the ends of the bone; that, after that was done, the plaintiff was X-rayed and the bones found to be in good condition; that he continued to watch him from day to day and inquired as to his condition and examined his leg to see what degree of shortening, if any, had taken place; that when he called he frequently found the upper pneumatic ring loosened; that on July 26, 1918, he had another X-ray taken which revealed that position of the bones had been changed and that the proximation was only about one-third of the surface of the bone whereas it had been about three-fourths; that he then loosened the splint and readjusted and realigned the bone; that he kept up the same kind of treatment until August 15, 1918, "when it seemed to be firm"; that that was ascertained by taking off the splint and examining the condition of the bone with the fingers; that at that time it seemed to be solid; that the plaintiff then began to get up and walk on a pair of crutches, and by about the last of August was allowed to go home; that in treating him and setting the leg and watching it and adjusting the splint he exercised the best skill and care of which he was capable.

There was offered in evidence on behalf of the defendant a document dated July 13, 1918, and signed by the plaintiff, which purported to be a release and which is as follows:

"Received of Milton S. Florsheim the sum of Two hundred twenty-five and no/100 Dollars ($225.00) which I (being of lawful age) acknowledge to be in full accord and satisfaction of a disputed claim growing out of bodily injuries sustained by me on or about the 6th day of July, 1918, at or near Sheridan Road and Roscoe Street, for which bodily injuries I have claimed the said Milton S. Florsheim to be legally liable, which liability is expressly denied, and in consideration of said sum so paid, I hereby remise, release and forever discharge the said Milton S. Florsheim, heirs, successors, administrators and assigns, from any and all actions, cause or causes of actions, claims and demands, for, upon, or by reason of any damage, loss, injury or suffering which heretofore has been, or which hereafter may be, sustained by me in consequence of such accident and injury."

Counsel for the plaintiff objected to the introduction of the release on the ground that it was immaterial, incompetent and irrelevant and was not a transaction between the parties to this suit. That objection was overruled.

At the close of the evidence, counsel for the defendant moved the court to direct a verdict. The trial judge then said, addressing the jury: "Gentlemen, the release has been offered here, which, under the law, as the court views it, extinguishes the plaintiff's right of action in this case, and, therefore, the court instructs the jury to find the defendant not guilty. You will please sign the verdict which the clerk will hand you." Pursuant thereto, the jury rendered a verdict finding the defendant not guilty. Motions for a new trial and in arrest of judgment were made and overruled, and judgment entered on the verdict.

The record shows two statements as to what transpired after the evidence was in and after examining them we are of the opinion that the foregoing should be considered as the authentic record.

The principal question in the case is whether the

document, which is an accord and satisfaction and a release, given by the plaintiff to Florsheim, was a bar to the plaintiff's present action against the defendant. In answering that question we shall assume that it was such an undertaking, on the part of the plaintiff, as to release Florsheim as to all injuries which the plaintiff sustained in consequence of the accident. The phraseology of the release shows that the plaintiff received from Florsheim $225 "in full accord and satisfaction" of a disputed claim growing out of bodily injuries sustained by the plaintiff on or about July 6, 1918. It also recites that the plaintiff claimed that Florsheim was legally liable, and that Florsheim expressly denied that liability. There is no evidence whatever in the record that the plaintiff was injured at the time of the accident as the result of any wilful wrongdoing or any negligence on the part of Florsheim or any one else. The plaintiff was struck by Florsheim's automobile, but whether it was a mere accident or caused by the plaintiff's contributory negligence or by Florsheim's negligence we do not know as there is no evidence in the record on that subject.

It is the law that where one is injured by the wrongful act or negligence of another and he exercises ordinary care in employing a medical practitioner, and the latter, by reason of malpractice, aggravates the original injury, that the original tort-feasor is liable for the aggravation. That is, apparently, on the ground that the unskilful treatment is a result which reasonably ought to have been anticipated by the tort-feasor.

In *Pullman Palace Car Co. v. Bluhm,* 109 Ill. 20, where it was claimed by the plaintiff that one of his arms had been broken by reason of defective workmanship by the defendant in constructing and erecting a certain derrick, the court said, in considering the enhancement of damages as the result of malpractice, that if the plaintiff exercised ordinary care

to keep the broken parts of the arm together and used ordinary care in the selection of surgeons and doctors and nurses, and employed those of ordinary skill and care in their profession, and, yet, "by some unskilful or negligent act of such nurses or doctors or surgeons, the parts became separated and a false joint was the result, appellant, (defendant) if responsible for the breaking of the arm, ought to answer for the injury in the false joint." And, further, "the liability to mistakes in curing is incident to a broken arm, and where such mistakes occur (the injured party using ordinary care), the injury ensuing from such mistakes is properly regarded as part of the immediate and direct damages resulting from the breaking of the arm." *Chicago City Ry. Co. v. Saxby,* 213 Ill. 274; *Chicago City Ry. Co. v. Cooney,* 196 Ill. 466; *Variety Mfg. Co. v. Landaker,* 227 Ill. 22; 26 Cyc. 1384. In the *Landaker* case, *supra,* the court sanctioned an instruction that contained the following: "The law regards the injury resulting from the mistakes of the physician, or from the failure of the means employed to effect a cure, as a part of the immediate and direct damages flowing from the original injury." 6 Thompson on Negligence, sec. 7211; *Purchase v. Seelye,* 231 Mass. 434; *Suelzer v. Carpenter,* 183 Ind. 23.

It follows, therefore, that, if there had been evidence that Florsheim was liable for the injury to the plaintiff, he would have been liable for the effects of the alleged malpractice of the defendant and that the release which was given to Florsheim would be a bar to the present suit by the plaintiff against the defendant.

But, there being no evidence whatever that when the plaintiff's leg was broken from being struck by the automobile Florsheim was legally liable in tort, the question arises whether the document in question given by him under those circumstances may be availed of as a defense by the defendant who is here

sued alone for malpractice. In *Leddy v. Barney,* 139 Mass. 394, the court said: "The rule that a release of a cause of action to one of several persons liable operates as a release to all, applies to a release given to one against whom a claim is made, although he may not be in fact liable. The validity and effect of a release of a cause of action do not depend upon the validity of the cause of action. If the claim is made against one and he is released, all who may be liable are discharged, whether the one released was liable or not." The words in the last sentence are quoted with approval in *Chapin v. Chicago & E. I. R. Co.,* 18 Ill. App. 47.

In *Hooyman v. Reeve,* 168 Wis. 420, which was a suit for malpractice, the effect of a release given by the injured party to his employer came up on a demurrer to an answer in which latter it was recited that the injured party had executed a release in which he acknowledged full satisfaction and discharge of all claims accrued or to accrue in respect of all injuries or injurious results direct or indirect, arising or to arise from an accident sustained by him while in the employment of his master, the Appleton Coated Paper Company. The court there says: "The damages sustained by the acts of the defendant (the defendant doctor) concurred or were connected with the negligence of the master in producing the injury and damages settled for by the master. The receipt given by the plaintiff, and which is not questioned, is broad and shows full settlement, for injuries received through the negligence of the master as well as on account of the alleged malpractice of the defendant." It will be observed that the court there used the words, "the negligence of the master in producing the injury" although, in the answer demurred to, negligence was not mentioned. That case upon close analysis, however, seems to be finally put upon the ground that "where the injured party (quoting language from *Hartigan v.*

*Dickson,* 81 Minn. 284) has accepted satisfaction in full for an injury done to his person, from whatever source it may come, the settlement he has made is so far effected in equity and good conscience that the law will not permit him to recover again for the same injury.'' In that case the release did not recite, as in the instant case, that liability, for the injuries being settled for, was disputed.

In *Cleveland, C. C. & St. L. Ry. Co. v. Hilligoss,* 171 Ind. 417, 86 N. E. 485, the court said: ''One who compromises a claim does not necessarily admit that the claim was well founded, but the one who receives the consideration is precluded from denying that it was. So it may be said that when a pretended claim for a tort has been settled by treaty, and satisfaction rendered the claimant by one so connected with the trespass as to be reasonably subject to an action and possible liability as a joint tort-feasor, the satisfaction rendered will release all who may be liable, whether the one released was liable or not. In such a case it is not necessary that it should appear that the party making the settlement was in fact liable. It will be deemed sufficient if there is an appearance of liability; that is, something in the nature of a claim on the one hand and a possible liability under the rules of law on the other.''

In Cooley on Torts, 3rd ed., p. 235, occurs the following language: ''Therefore, if he (meaning the injured party) accepts the satisfaction voluntarily made by one, that is a bar to all. And so a release of one releases all, although the release expressly stipulates that the other defendants shall not be released. And this rule is held to apply even though the one released was not in fact liable.''

In *Miller v. F. Beck & Co.,* 108 Iowa 575, 79 N. W. 344, the court said, referring to the rule of equity and good conscience: ''In accordance with this rule, it has frequently been held that the validity and effect of a

release of a cause of action does not depend upon the validity of the cause of action, and that if the claim is made against one, and it is satisfied, all who may be liable are discharged, whether the one released is liable or not."

In *Abbott v. City of Senath,* —— Mo. ——, 243 S. W. 641, the court held that even though it was not shown definitely that there was any liability on the one who undertook to settle with the injured party, yet, as the money was paid to the injured party as a settlement, that was exhaustive and extinguished all liability arising by reason of the primary injury, itself.

That the rule is deduced from an application of the principles of equity and good conscience seems to have been first suggested by Mr. Justice Miller in *Lovejoy v. Murray,* 3 Wall. (U. S.) 1 (1865), where he said: "But, when the plaintiff has accepted satisfaction in full for the injury done him, from whatever source it may come, he is so far affected, in equity and good conscience, that the law will not permit him to recover again for the same damages." It follows, therefore, that when the plaintiff signed the document of July 13, 1918, in which he recited that he received $225 from Florsheim which he acknowledged "to be in full accord and satisfaction of a disputed claim growing out of bodily injuries" sustained by him on July 6, 1918, and by which document he further recited that he thereby released and forever discharged Florsheim "from any and all actions, cause or causes of actions, claims and demands, for, upon, or by reason of any damage, loss, injury or suffering" which he had suffered or would suffer "in consequence of such accident and injury," he must be considered, as a matter of "equity and good conscience," and, so, in the eyes of the law, as having received full satisfaction, and he will not be allowed to recover again for the same injury or its aggravation by malpractice.

Taking that view of the case, consideration of the evidence concerning the defendant's malpractice becomes unnecessary.

The judgment is affirmed.

*Affirmed.*

O'CONNOR and THOMSON, JJ., concur.