## Lora Austin, Appellee, v. Nell Bass and James C. Harris, Appellants.

1. INTOXICATING LIQUORS, § 249*—*when refusal of instruction on nonliability of landlord and intoxicated tenant for death of intoxicated person at hand of tenant is erroneous.* In an action under the Dramshop Act against the tenant and the owner of premises to recover for the death of plaintiff's husband where such death occurred as the result of a shot fired by such tenant while intoxicated, and deceased also appeared to have been intoxicated, but there was controversy as to whether his intoxication was caused by the drinking of liquor sold to him by such tenant, *held* that the refusal of an instruction offered by the defendants, telling the jury that if they believed that the deceased was killed by said tenant while she was intoxicated, and that because of her said intoxication alone she shot and killed the deceased, they should find the defendants not guilty, was error.

2. INTOXICATING LIQUORS—*when landlord and tenant not liable for death of intoxicated person at hand of intoxicated tenant.* In an action against the tenant and the owner of premises to recover under the Dramshop Act, where the death of plaintiff's husband was caused by a shot fired by the tenant, and both the tenant and the deceased drank liquor sold to the deceased, and also liquor sold by the tenant to a person other than the deceased, *held* that the sale or sales made by the tenant to the deceased could not be regarded as creating a liability, where the act complained of was caused by the intoxication of the tenant; but that a different question would arise if it should appear that the intoxication of the deceased was the cause of his death, and not direct and wilful act of the tenant.

3. INTOXICATING LIQUORS, § 250*—*when instructions on allowance of exemplary damages in action under Dramshop Act are erroneous.* In an action by a wife under the Dramshop Act to recover for loss of means of support due to death of plaintiff's husband, instructions relating to the allowance of exemplary damages, which failed to advise the jury under what circumstances such damages could be allowed, *held* improper, as, in order to recover such damages, it must be shown that the sale was made under aggravating circumstances on the part of the seller.

4. INTOXICATING LIQUORS, § 249*—*when instruction in action by*

*See Illinois Notes Digest, Vols. XI to XV, and Cumulative Quarterly, same topic and section number.

*wife for loss of means of support due to death of intoxicated husband at hand of tenant is erroneous.* In an action by a wife under the Dramshop Act against the tenant and the owner of premises, to recover for loss of means of support due to death of the husband, as the result of a shot fired by the tenant, where it appeared that the deceased and the tenant both drank liquor purchased by a third party, *held* that an instruction telling the jury that if, after arriving at the premises in question, the deceased was sold or given intoxicating liquor that contributed to his further intoxication, such fact would be no defense, was improper.

5. Intoxicating liquors—*when sale of liquor by tenant to person shot by tenant after drinking part of liquor sold is not producing cause of death.* In an action against the tenant and the owner of premises to recover under the Dramshop Act, where the death of plaintiff's husband was caused by a shot fired by the tenant, and where both the tenant and the deceased drank liquor sold to the deceased, and also liquor sold by the tenant to a person other than the deceased, and where plaintiff contended that because the deceased gave one of three bottles of beer, which the tenant had sold to him, to said tenant, who drank it, such sale was a producing cause of the death of the deceased, *held* that after the deceased had purchased the beer from the tenant he had the right to do as he pleased with it, and that if any one was responsible for the act of the deceased in giving the tenant the beer to drink, it was the deceased, who gave it to her.

Appeal from the City Court of Benton; the Hon. Robert E. Hickman, Judge, presiding. Heard in this court at the March term, 1917. Reversed and remanded. Opinion filed June 18, 1917.

D. B. Reid, George B. White and Denison & Spiller, for appellants.

Fowler & Duty, for appellee.

Mr. Presiding Justice McBride delivered the opinion of the court.

The appellee failed to file her brief within the time prescribed by the rules of this court, and the judgment of the court could have been reversed and remanded pro forma, but, upon examining the record, we have determined to consider the case upon its merits.

The cause was submitted to a jury, and after a hearing it returned a verdict for the appellee, upon which a judgment was rendered for the amount of $1,800.

It appears from the record in this case that for some months prior to June 24, 1916, Nell Bass had been residing in a house belonging to James C. Harris, and situated in the western part of Johnston City, Williamson county, Illinois, and that for some time prior to said date she had been engaged in the business of selling intoxicating liquors at her said residence, and that as it appears from the evidence she had many customers who came there and bought and drank liquors, especially beer, very frequently. It also appears that the landlord, James C. Harris, had himself been present at times and saw and knew that drinking was going on in the house; but it further appears that a feeble effort was made by him to cause Nell Bass to be removed from the premises, but the effort made was not effective.

On June 24, 1916, at the hour of about five o'clock p. m., Bob Austin, the husband of appellee, and a man by the name of George Briscoe went to the residence of Nell Bass, and when there Austin ordered three bottles of beer, for which he paid twenty-five or thirty cents. It appears that he drank one of the bottles of beer, gave one to Briscoe, and the other to Nell Bass; that all three sat down to a table and were for some time engaged in the drinking of this beer. It further appears that Austin and Briscoe remained in the house of Nell Bass until about eight or nine o'clock that evening, and during the whole of the time they were there different persons stated that they saw them drinking beer, some out of bottles, and some out of a bucket. It appears that some time during the evening John Sposta brought a bucket of beer from a saloon down town, and that Nell Bass, Bob Austin and George Briscoe drank out of this bucket of beer. It

further appears that during the evening several persons came in to the residence of Nell Bass and purchased bottled beer for which they paid ten cents a bottle, and most of these persons saw Austin and Nell Bass drinking beer either out of bottles or out of this bucket, and two or three of them testified that along late in the evening they became somewhat intoxicated, and as the witnesses described it were "pretty full."

It further appears from the evidence of Briscoe that he left the place about eight o'clock, and that just before leaving Austin and Nell Bass were engaged in somewhat of a quarrel; that Nell Bass had asked Austin why it was that he returned her to the grand jury for bootlegging, which he denied; that shortly thereafter she sat down in his lap with her arm around his neck, at which time Briscoe left the room, and had not gone more than seventy steps until he heard a shot fired and Austin came running out of the house and told Briscoe that he was shot, and fell to the ground. No one saw the shooting, but Nell Bass afterwards stated that she did the shooting, and did it because she was intoxicated.

It further appears from the evidence that the appellant, Nell Bass, was running what the witnesses termed "a bootlegging joint," and many of them said that that was the reputation of the house.

This suit was instituted by appellee to recover from Nell Bass, the tenant, and James C. Harris, the landlord, on account of the loss of her means of support by reason of the death of her husband caused by the sale of intoxicating liquor by Nellie Bass, the tenant, and permitted by Harris, the landlord, to be sold on his premises.

It is contended by counsel that the appellants are not liable because there is no evidence that shows Nell Bass sold or gave intoxicating liquor to any one who caused the death of appellee's husband, and that the

case made by the appellee does not come within the provisions of the Dramshop Act, sec. 9 (J. & A. ¶ 4609) of which provides that: "Every   *   *   *   wife, *   *   *   who shall be injured in person, property or means of support, by an intoxicated person, or in consequence of the intoxication, habitual or otherwise, of any person, shall have a right of action in his or her own name, severally or jointly, against any person or persons who shall, by selling or giving intoxicating liquors, have caused the intoxication, in whole or in part, of such person or persons." It is insisted by counsel for appellants that even if the death was caused solely by the intoxication of Nell Bass, there could be no liability, and upon the trial instruction number 8 was presented by them and refused by the court, which is as follows: "The court instructs the jury, that if you believe from the evidence in this case that the defendant, Nell Bass, on the evening or night that plaintiff's husband, Robert Austin, was killed, was then and there drunk or intoxicated and that because or on the account of her said intoxication, if any, alone, she shot and killed the plaintiff's husband, Robert Austin, then you should find the defendants both not guilty in this case."

It is clear from the evidence that Nell Bass sold intoxicating liquor to Bob Austin, and if the jury had found that the loss of appellee's means of support was caused by the intoxication of Austin, then a different question would have been presented, but by the refusal of this instruction, even if such loss of means of support was caused by the intoxication of Nell Bass alone, the jury could have found a verdict for the appellee, and we think the court erred in refusing the instruction.

The precise question now under consideration has never been determined so far as we have been able to

ascertain by the Supreme, or any of the Appellate Courts of this State, and as presented in this case is one of first impressions. The Dramshop Act is leveled at persons selling or giving away intoxicating liquors, and as a consequence of such acts has caused a loss in property or means of support to others. In this case Nell Bass killed Bob Austin and deprived his widow of her means of support, but was such killing caused by the selling or giving away of intoxicating liquors by Nell Bass? While it appears from the evidence that they drank considerable beer during the time that Austin was at Nell Bass's house, it does not appear very clearly what sales were made to Austin except the first beer that they drank, which was shown to have been purchased by Austin for which he paid twenty-five or thirty cents for three bottles of beer, one of which he drank, one was drunk by Briscoe and one by Nell Bass. Nell Bass sold him the three bottles of beer, then he gave one of these bottles back to her to drink, and it is argued that this sale contributed to the intoxication of Nell Bass and Bob Austin, and was a producing cause for the death of Bob Austin. It seems to us that under the decisions of this court that after Bob Austin had purchased this beer of Nell Bass he had the right to do as he pleased with it, and he chose to give Nell Bass one of the bottles to drink, and that if any one was responsible for this it would be Bob Austin who gave it to her.

It is said by our Supreme Court in a case where an adult had purchased liquor and given it to a minor who was at the bar and drank with the adult, that such would not be a sale or gift by the dramshop keeper, and in commenting upon this case the Supreme Court said: "It is true in such case he would be letting a minor have liquor, and if that were prohibited he would be amenable therefor, but he would neither be selling nor giving to a minor, he would simply be sell-

ing to an adult.  To illustrate:  Three men step up to a bar of a saloon, and one of them calls for three glasses of beer.  The barkeeper sets them out, and the person calling for them pays for them, each of the three then drinking one of the glasses of beer.  There is here, surely, only a sale to the one calling for the beer, and he, in popular language, is 'treating' the other two.  Whether he drinks the three glasses himself, or gives one to each of the other two, or to two other persons, cannot concern the barkeeper.  It is impossible that by the mere act of one person's drinking liquor ordered and paid for by another, a liability can be imposed on the vendor, under the section before us, which would not have existed if that person had not drank." *Siegel v. People,* 106 Ill. 89.  And this case was in the case of *City of Decatur v. Schlick,* referred to and distinguished, but not in any manner criticised or overruled, but it was said in the *Decatur* case that as it arose under the Anti-Saloon Territory Act that a different rule applied than that invoked under the Dramshop Law.  *City of Decatur v. Schlick,* 269 Ill. 191.

Suppose that when Austin purchased this beer of Bass he had taken it out in the street or to a neighbor's house and given it to another person, and such person had after drinking the beer committed a depredation, or suppose that while in the house Austin after purchasing the bottle of beer had given it to a person in the house, and that upon drinking such beer such person became wild and enraged and injured another, could it be said that N̈ell Bass was liable to the person so injured on account of that sale when the liquor was given to him by Austin?

Under the decisions of the Supreme Court the selling of liquor is treated as a contract, and it is said that the saloon keeper has the right to sell to whomsoever he chooses or may refuse to sell; in other

words, such saloon keeper has the right to select the persons with whom he will deal. After a careful consideration of the record in this case we are of the opinion that the sale or any sales made by Bass to Austin on that occasion could not be regarded as creating a liability where the act complained of was caused by the intoxication of Nell Bass. If it should appear from the record that the intoxication of Austin was the cause of his death and was not the direct and wilful act of Nell Bass, then a different question would arise. *Shugart v. Egan,* 83 Ill. 56.

It is also complained that the court erred in refusing to give appellant's first, fifth and sixth refused instructions because there was no evidence tending to sustain the allegations in those counts as to who it was who killed the deceased. While this may not have been reversible error, it was erroneous as there was no evidence sustaining these counts, as the evidence is clear that the killing was done by Nell Bass.

It is also complained that instructions 3 and 4 should not have been given as they did not advise the jury under what circumstances exemplary damages were allowed, and we think it is the well-settled law of this State that it must be shown that the sale is made under aggravating circumstances on the part of the seller, or is wantonly or wilfully done. *Kellerman v. Arnold,* 71 Ill. 632.

We also think that the objection to appellee's seventh given instruction is well taken as it advises the jury that if, after arriving at the house, the deceased was sold or given intoxicating liquor that contributed to his further or more complete intoxication, that such would be no defense in this case. It appears from the evidence that other beer was brought there, and that the deceased and Nell Bass both drank from the bucket of beer with which Nell Bass had nothing whatever to do, so far as the evidence discloses, with

the purchasing, and this instruction should not have ignored such fact. Many other criticisms are made upon the instructions which we do not deem it necessary to consider at the present time as sufficient has already appeared to cause a reversal of this case.

For the reasons above given we are of the opinion that the court erred in the giving of its instructions and in rendering judgment against the appellant, and the judgment of the lower court is reversed and the cause remanded.

*Reversed and remanded.*