Fred Manthei, Appellant, v. Lewis G. Heimerdinger, Trading as The 26 Club and Freeport Motor Casualty Company, Appellees.

Gen. No. 10,147.

Opinion filed October 9, 1947.
Released for publication October 29, 1947.

JOHN H. PAGE and B. JAY KNIGHT, both of Rockford, for appellant; FREDERICK H. HAYE and THOMAS A. KEEGAN, both of Rockford, of counsel.

BURRELL, BURRELL & BECKMIRE, of Freeport, for appellees; DAVID M. BURRELL, of Freeport, of counsel.

MR. JUSTICE DOVE delivered the opinion of the court.

Appellant, Fred Manthei, filed his complaint against Lewis G. Heimerdinger and the Freeport Motor Casualty Company under the provisions of the Dram Shop Act seeking to recover damages for injuries which he alleged he sustained on August 9, 1943, when an automobile in which he was riding as a passenger was struck by another automobile negligently driven by Jan Kerch at the intersection of East Linden street and West Galena avenue in the City of Freeport. The defendant, Heimerdinger, is charged with having previously, on that day, furnished Kerch with intoxicating liquors causing her to become intoxicated and the Freeport Motor Casualty Company is made a defendant as the owner of the premises in which Heimerdinger conducted his tavern business.

The defendants filed a joint answer admitting the ownership of the tavern and premises but denied

the other allegations of the complaint. The answer of the defendants also set up four separate affirmative defenses. For the purpose of this opinion only the fourth need be referred to. This fourth affirmative defense sets up that the defendant, Freeport Motor Casualty Company, as lessor of the premises in which the other defendant operated his tavern, was liable to the plaintiff, if at all, as the guarantor of the defendant, Heimerdinger, as provided by the Dram Shop Act and that Heimerdinger, if liable to the plaintiff at all, is only jointly liable with Kerch; that the Pennsylvania Casualty Company was the insurance carrier and liable for personal injuries resulting from the operation of the Jan Kerch car, and that it paid to the plaintiff herein $3,000 and in consideration thereof, the plaintiff executed and delivered to Jan Kerch and the Insurance Company, under his hand and seal, a release whereby he forever released and discharged Jan Kerch of and from all liability, claim, demand and cause of action arising out of the matters set forth in plaintiff's complaint and concluded that thereby the plaintiff also released these defendants from all claims arising out of said collision as set forth in the complaint.

The record shows that the plaintiff filed a motion to strike this fourth affirmative defense, as well as the second and third affirmative defenses, and counsel for both appellant and appellees, in their briefs state that the court overruled that motion. Neither the abstract or record show any order entered by the court in connection with plaintiff's motion to strike but does show that a reply was filed by the plaintiff in which he denied that the defendant, Freeport Motor Casualty Company, as lessor of the premises, was liable as guarantor of the defendant, Heimerdinger, but avers that this defendant is liable as owner and lessor of the premises as provided by the Dram Shop Act. He admitted that the Insurance Company which in-

sured Kerch settled plaintiff's claim against her and paid to the plaintiff $3,000 in consideration of his releasing Kerch from any further liability on account of plaintiff's injuries and admits that he executed and delivered to Jan Kerch a written instrument releasing her from further liability or responsibility for his injuries. He denied that Heimerdinger is liable only jointly with Kerch and denies that Kerch, Heimerdinger and the Freeport Motor Casualty Company were joint tortfeasors and denied that the release he executed operated to release the defendants to this action from liability for his injuries under the Dram Shop Act.

With the pleadings in this condition it was stipulated by the attorneys representing the parties hereto that the Pennsylvania Insurance Company, prior to the commencement of this suit, for and on behalf of Jan Kerch, issued a draft for $3,000 and delivered the same to the plaintiff herein, Fred Manthei, and in consideration thereof received from him a general release releasing Jan Kerch of and from any and all liability arising out of the accident upon which this proceeding is based. Thereupon the defendants moved for judgment on the pleadings alleging that plaintiff's reply to defendant's fourth affirmative defense admits the allegations therein. Upon a hearing the trial court held that it appeared from the pleadings, that plaintiff received a single, indivisible injury in a single accident and had received $3,000 therefor from one wrongdoer. That the plaintiff had executed a release to her for that injury and it therefore followed that defendants were entitled to judgment. Accordingly the court sustained defendant's motion and rendered judgment in favor of the defendants and against the plaintiff in bar of the action and for costs. From this judgment the plaintiff appeals.

Counsel for appellant, in support of their contention that the release executed by the plaintiff to Jan Kerch

should not bar this action against appellees, argue that the liability of Jan Kerch arose under the principles of the common law and is based on negligence, that this action is a statutory one brought under the provisions of the Dram Shop Act, that no joint liability exists between Jan Kerch and the defendants in this proceeding and therefore a release of a common-law right of action does not operate to release appellees whose liability is purely statutory.

In order to sustain the judgment of the trial court appellees insist that it is immaterial whether defendants in the instant action and Jan Kerch are regarded as joint tortfeasors or not, that whatever their relationship may be called, the law is that a release of one operates to release all, so long as it is shown that their wrongful acts produced a single, indivisible injury. Counsel state that their fourth affirmative defense is grounded on the theory that where one receives a single injury for which a number of people are legally liable to respond in damages for the entire injury that then a release of one is a release of all, but counsel insist that inasmuch as the plaintiff contested this theory by a motion to dismiss this fourth affirmative defense and the trial court having overruled that motion and plaintiff having then elected to file a reply, thereto admitting the facts set forth in defendants' fourth affirmative defense that the question whether the release executed by the plaintiff which released Jan Kerch from any demands plaintiff had against her also released the defendants, is not presented to this court for review.

There is no merit in this contention. The record shows that this motion to dismiss or strike the fourth affirmative defense was not passed upon by the court. Whether it was or whether plaintiff abandoned it is immaterial. A motion to strike or dismiss under our present practice is the same as a demurrer under our former practice and it is true as stated in *Nord-*

*haus v. Vandalia R. Co.*, 242 Ill. 166, 169 that the law has always been that a demurrer is waived by pleading over but the record here shows that, without objection by defendants, a reply to the fourth affirmative defense was filed which admitted the allegations of this fourth affirmative defense so far as it pleads the execution of this release. The effect therefore of filing such a reply, and entering into the stipulation referred to and defendants' motion for judgment on the pleadings and record was to raise the same question which would have been raised had the court denied plaintiff's motion to strike this affirmative defense and had plaintiff refused to reply and elected to abide his motion to strike and defendants had then moved for judgment. In the trial court the defendants did not question the form or substance of the reply but joined with the plaintiff in entering into a stipulation and then defendants filed their motion for judgment. The trial court, counsel for the plaintiff and counsel for defendants all treated that motion as properly raising the question whether or not this release executed by Jan Kerch is a bar to the instant action. Defendants contended that it was and plaintiff insisted that it was not. The trial court was not asked to hold nor did it hold that the reply was defective in form or substance. Upon defendants' motion for judgment, the trial court adopted defendants' view of the law and held that this release so set forth in defendants' fourth affirmative defense, and its execution admitted by the plaintiff's reply and by the stipulation of the parties, operated as a bar to this proceeding. This was the question raised by the pleadings. This was the question the parties desired the trial court to pass upon and this is the question argued in the trial court and also in this court. Counsel for appellant do not claim that the release executed by their client was not a general release and concede the general rule to be that a general release to one of several joint tort-

feasors discharges the other. It is insisted, however, that the defendants and Jan Kerch were not joint tortfeasors and that the release of Jan Kerch's common-law liability did not extinguish appellant's statutory cause of action against appellees. Counsel cite and rely upon *Philips v. Aretz,* a Minnesota case reported in 215 Minn. 325, 10 N. W. (2d) 226 and *McKenna v. Austin,* 134 F. (2d) 659.

In the *Philips-Aretz* case the plaintiff, a minor, brought a suit against a dram shop keeper and the surety on his bond to recover damages for the death of his father. The complaint charged that the defendant dram shop keeper, in violation of an ordinance of the village which licensed him to engage in business and in violation of the statutes of that State, sold liquor to the plaintiff's father resulting in his intoxication, that on his way home, because of his intoxicated condition, he was struck by a passing motorist, named Costigan, and died a few hours later. The trial court sustained a demurrer to the portion of the answers of the defendants which alleged that shortly after the death of the father, his wife, as administrator of her husband's estate, instituted suit against Costigan to recover under the wrongful death act of that State, claiming that her husband's death was caused by the negligence of Costigan; that thereafter she settled that action and received from Costigan $3,250 in consideration of which she executed and delivered to him a "full release from said cause of action and a dismissal of said action with prejudice and without costs to either party." The answers of the defendants further alleged that $702.23 of the proceeds of the settlement was, under the direction of the court, set aside for the benefit of the minor plaintiff in the instant suit. In affirming the action of the trial court, the Supreme Court stated that no one questioned the soundness of the cases cited which held that one injured party who has accepted satisfaction from any source cannot

recover again for the same injury. The court went on to say, however, that there were two legislative enactments involved in the case under consideration, one involving the rights and remedies given by the wrongful death act statute and the other dealing with the rights and remedies given by the liquor license law, that both are remedial enactments providing rights and remedies, unknown to the common law. That under the former, the surviving spouse and next of kin are given rights, within the limits of the statute, to recover damages measured by the monetary loss to the heir or heirs of the decedent and that the liability created under the liquor license statute has for its basis a penalty measured by the injuries suffered and that a recovery is allowed not for a tortious wrong one to plaintiff but as a means of enforcing the penalty imposed on the liquor dealer. The court then concluded:

"As we have seen, these statutes are wholly unrelated in scope and purpose. In the action by the administratrix against Costigan, his negligence was the sole basis upon which that cause was founded. In the instant case the liquor dealer's liability to plaintiff does not involve that issue at all. Rather, and only, his liability is a means of 'punishment . . . for having violated the law' and is not based on a 'wrong done to plaintiff.' *Mayes v. Byers, supra.* Thus defendants' theory of avoiding liability on the ground that Aretz and Costigan were 'joint' or 'concurrent' tort feasors in causing Bertrem's death cannot be sustained in this kind of action, which is one to enforce a penalty under a statute which 'contains no implication that the prohibited act must be done knowingly or wilfully' or that defenses such as contributory negligence, lack of guilty knowledge, or the like are essential elements of the case. . . . We think, and so hold, that recovery here 'is allowed not for a tortious wrong . . . but as a means of en-

forcing the penalty imposed on the dealer' by statute, ordinance and by his own contract.''

The factual situation in the instant case is entirely different from the factual situation in *Philips v. Aretz, supra.* Where an intoxicated person is killed there is, as suggested by counsel for appellees, always a possibility that two actions may be asserted, one under the wrongful death act where the suit is brought for the benefit of the next of kin to recover for pecuniary loss and the other, an action under the Dram Shop Act by a husband, wife, child or other person who has sustained injury in person or property or means of support. In such cases different questions arise, the plaintiffs may be different persons, the nature of the claims are not the same and the measure of damages is different. In the death case the cause of action is the wrongful act, neglect or default causing death and not the death itself. In the instant case it was the negligence of the intoxicated person, Jan Kerch, which caused the injuries for which plaintiff seeks to hold these defendants liable. In this State the Dram Shop Act provides a remedy to one injured in his person or property by the tortious act of an intoxicated person against the tavernkeeper and his landlord in order to compensate such injured person for the damage sustained. In Minnesota the recovery is allowed as a means of enforcing a penalty imposed on a liquor dealer. Our Dram Shop Act does not create a right of action for all acts of intoxicated persons but only for the tortious acts of intoxicated persons. *Hill v. Alexander,* 321 Ill. App. 406. Under both counts of the complaint in the instant case the extent of the damages which the plaintiff could recover against the defendant would be only such an amount as would compensate him for the injuries he sustained. He could not recover exemplary damages, (*Austin v. Bass,* 206 Ill. App. 435) and the measure of damages appellant could have recovered from Jan

Kerch for her negligence was the same as he could recover in the instant proceeding. The Minnesota case is not authority contrary to the general proposition that for a single indivisible injury which plaintiff sustains he is entitled to receive but one compensation and if he received that compensation from the one who inflicted the injury and executed to him a general release, that then there could be no further recovery.

Counsel for appellant also cite and rely upon *McKenna v. Austin*, 134 F. (2d) 659. In that case the plaintiffs, Helen M. McKenna and her husband Royal T. McKenna, brought suit against Theodore Austin to recover damages for personal injuries which Mrs. McKenna sustained while riding as a passenger in a taxicab. This taxicab was owned by Independent Taxi Owners Association and William L. Driscoll. The defendant, Austin, owned the automobile which collided with the taxicab in which Mrs. McKenna was riding. One of the defenses interposed by Austin, was that plaintiffs had made full accord and satisfaction with the owners of the taxi in which she was riding and executed a release which the defendant Austin insisted was a bar to the suit brought against him. The release is set out as a foot note on page 660 of the reported case. By it the plaintiffs acknowledged the receipt of $3,000 and covenanted not to sue the owners of the taxi on account of the injuries or losses resulting from the collision and discharged them from any liability in connection therewith. It contained this clause: "this instrument is not maintained as, and shall not be deemed a release of any cause of action that the undersigned may have against Theodore Austin." The plaintiffs insisted this was not a release from substantive liability but a covenant not to sue the owners of the taxicab in which she was riding at the time she was injured. It was further insisted that the owners of the taxicab and the defendant, Austin, were not joint tortfeasors, but acted in-

dependently and that the court should have taken evidence and decided this question as a matter of fact before it construed the agreement and that the only proper effect to be given the settlement would be to apply the amount received to reduce *pro tanto* the total damages. The District Court of the United States for the District of Columbia, however, upon the pleadings, held this instrument was a general release and barred a recovery and entered judgment for the defendant. The Circuit Court of Appeals adopted the view of counsel for the plaintiffs and reversed the judgment of the District Court. In a lengthy opinion, written by MR. JUSTICE RUTLEDGE and concurred in by the present Chief Justice of the Supreme Court of the United States, the court traces the historical development of the rule that the release of one joint tortfeasor operates to discharge the others, stated that the foundations upon which it rests are in confusion, comments upon the fact that when that rule is applied, the amount received, its relation to the total damage done and the intention to retain rights against the other wrongdoers is immaterial. The court recognized that there is conflict among the authorities concerning what is a release and what is a covenant not to sue and said that the instrument it was considering would be held by some courts to be a covenant not to sue while others would hold it to be a release. The court continued: "It is no defense for wrongdoers that others aided in causing the harm. Each is responsible for the whole. But that does not mean the injured person may have more than full satisfaction, except as punitive damages. He has no right to make profit from his harm because several share in causing it. Accordingly when one makes full reparation for all the loss, the others are discharged from liability to the injured person." The court then said that the distinction between a "release" and a "covenant not to sue" is entirely artificial, that it

was not material whether the instrument which it was construing be considered a release or a covenant not to sue, inasmuch as that instrument expressly reserved the plaintiff's rights against Austin, therefore he, Austin, was not discharged.

Under the authorities in this State there is a substantial distinction between a release and an instrument denominated a covenant not to sue. (*Chicago & A. Ry. Co. v. Averill*, 224 Ill. 516, 521, 522; *City of Chicago v. Babcock*, 143 Ill. 358, 366; 23 R. C. L. 408, Release, sec. 37.) "When a technical release under seal or on satisfaction being made for the injury, is given by the injured party to one of several joint wrongdoers, the courts have quite uniformly held this to release all, and to be a bar to an action against those not named in the release. In the case of a release under seal, its meaning cannot be controlled by parol evidence and the law raises a conclusive presumption that it was given in full satisfaction in fact for the injury, and on a sufficient consideration. . . . The question of whether a release to, or a satisfaction from, a person not shown to be liable as a joint wrongdoer comes within the rule that a discharge of one joint wrongdoer is the discharge of the others is attended with no little difficulty, on principle, and the authorities are more or less conflicting. Many cases hold that the rule applies only where the money is paid by, or the release executed to, one who is himself actually guilty of the wrong." (23 A. C. L. Release, sec. 35, pp. 405, 406.) "The injured party" continues the text (sec. 36, p. 407) "is entitled to full compensation for his injuries, and to but one compensation. When therefore he receives a full compensation in fact from one of two or more joint wrongdoers, or when he enters into such a contract with one that the law raises a presumption that he has received such full compensation from him, such receipt of compensation, or such agreement, is a

bar to an action against the other wrongdoer. To bar the action of the injured party it must be shown either that he has received full compensation for his injuries, or what was intended as a full compensation, or that he has released one or more of the wrongdoers by a technical release under seal. If the release is in such form or accompanied by such restrictions or reservations as to repel a presumption of satisfaction it does not necessarily discharge all, but is in effect merely a covenant not to sue the wrongdoer to whom the release is given. If a release is given to one of several joint tortfeasors in consideration of complete satisfaction for the injury, but reserving the releasor's claim against the others, the reservation is void, because there is nothing to reserve.''

In the instant case the instrument executed by appellant was a technical general release which is defined as the giving up or abandoning of the claim or right to the person against whom the claim exists. A release is itself a discharge of the claim or obligation. A receipt is only evidence that the debt has been paid or the claim satisfied. Not so of a written release. It is not only evidence of the extinguishment of the debt or claim but is the extinguisher itself. If the party injured, for a consideration, has surrendered to the party in whose favor a contract runs, which contract purports to be a satisfaction for the wrong and a release of the wrongdoer, jointly liable with others on account of the tort, then there can be no further proceeding, for the right of action is gone. (23 R. C. L. Release, sec. 2, pp. 375, 376.)

*Mooney v. City of Chicago,* 239 Ill. 414, was an action brought by the administrator of the estate of Edward Dillon to recover damages against the City of Chicago for his wrongful death. It appeared that Dillon was working for one McKay as a teamster and while driving a wagon along the street received injuries from which he subsequently died. The iron

skein of the axle of the wagon which he was driving was defective and broke when the wagon ran into a hole or depression in the street. After the accident Dillon executed a release to McKay in satisfaction of the damages resulting from the accident. This release was pleaded by the defendant, City of Chicago. In reversing the judgment of the Appellate Court which affirmed the judgment rendered by the circuit court for the plaintiff the court said: (pp. 422, 423.)

"The Appellate Court, in dealing with the question, expressed the opinion that the cause of action released or satisfied by the instrument was an entirely different one from the statutory cause of action; that the release had no relation to the case and was erroneously admitted in evidence, and was therefore properly ignored in the instructions. This view of the law is erroneous and not in accord with the authorities. There was but one cause of action and there could be but one recovery or satisfaction. A cause of action in suits for damages arising from negligence is the act done or omitted to be done by the defendant affecting the plaintiff which causes a grievance for which the law gives a remedy. (*Swift & Co. v. Madden,* 165 Ill. 41.) In suits like this, the cause of action is the wrongful act, neglect or default causing death, and not merely the death itself. (*Holton v. Daly,* 106 Ill. 131; *Crane v. Chicago and Western Indiana Railroad Co.,* 233 id. 259.) The statute gives a right unknown to the common law in cases where the wrongful act, neglect or default is such as would, if death had not ensued, have entitled the party injured to maintain an action and recover damages. One condition upon which the statutory liability depends is that the deceased had a right of recovery for the injuries at the time of his death, and there is no right in the administrator to maintain an action unless the deceased had the right to sue at the time of his death.

There being but one cause of action there can be but one recovery, and if Dillon had released the cause of action the statute does not confer upon his administrator any right to sue." (Citing cases.)

Following the case of *Young v. Anderson,* 33 Idaho 522, 196 Pac. 193, an Idaho case reported in 50 A. L. R. 1056 is an exhaustive annotation and many cases are cited and commented upon. On page 1100 it is said: "The majority of cases sustain the following conclusion: 'A release to one liable with another, or others, for the same injury releases the other or others, where each of the tortfeasors is liable for the entire damages suffered by the injured party; it is immaterial whether they are jointly liable.'"

The court in *Brown v. City of Cambridge,* 3 Allen (Mass.) 474, cited in *McKenna v. Austin, supra,* said:

"It is an ancient doctrine that a release to one joint trespasser, or a satisfaction from him, discharges the whole. The same doctrine applies to all joint torts, and to torts for which the injured party has an election to sue one or more parties severally. . . . If it were not so, a party having a claim against several persons on account of a single tort might sue one and settle the suit, receiving damages; he might then sue another and settle in the same way, and repeat the proceeding as to all but one, and then sue him and recover the whole damage, as if nothing had been paid by the others. A door would thus be opened to a class of speculations that do not deserve encouragement. The rule of law which makes one satisfaction or release a bar to further claims for the same tort is founded in good reason."

This case has been cited by our courts many times and the foregoing excerpt from the opinion appears in *Chapin v. Chicago & E. I. R. Co.,* 18 Ill. App. 47. In that case the plaintiff was a passenger on a train operated by the Wabash, St. Louis and Pacific Rail-

way Company and he sustained injuries when the train on which he was a passenger ran into a freight train of the defendant, Chicago and Eastern Illinois Railroad Company. Subsequently the plaintiff received from the Wabash Railway Company $1,090.95 in full satisfaction of his claim for damages against that company. Upon the trial against the Chicago & E. I. R. Co. it was insisted by counsel for the plaintiff that the two railroad companies were not joint tortfeasors, not jointly liable and therefore the release of the Wabash did not have the effect of discharging the defendant, Chicago & E. I. R. Co. but the court said:

"Whether they were joint tortfeasors or not we do not deem it important, in the view we take of the case, to decide. It is enough if they were both liable for the same injury. . . . Plaintiff, in this case, had a right of action against either company for the injury he received, whether he could have maintained a joint action or not. If this be so, then a release to one discharged both." See also *Wallner v. Chicago Consol. Traction Co.*, 245 Ill. 148.

In *Cleveland, C., C. & St. L. R. Co. v. Hilligoss,* 171 Ind. 417, 86 N. E. 485, 131 Am. St. Rep. 258, the conductor of a street railway car was injured when his street car was struck by defendant's train at a street crossing. It appeared that the plaintiff had executed a release discharging the street car company, his employer, from any liability because of the accident. The court held that such release operated to bar plaintiff's action against the railroad. In the course of its opinion the court said:

"It is an ancient and well established rule almost without exception in England and America that for a single injury there can be but one recompense. When more than one unite in the commission of a wrong, each is responsible for the acts of all and for the

whole damage; also, where separate and independent acts of negligence by different persons concur in perpetrating a single injury, each is fully responsible for the trespass. Courts will not undertake to apportion the damage in such cases among the joint wrongdoers. The injured party has, at his election, his remedy against all or any number. . . . He may elect to look to one only and if he accepts from that one a benefit or property in satisfaction and release, he can go no further. He can't have a second satisfaction. Having had a reparation from one who was responsible for all the damage and released him, all others who were jointly, or jointly and severally liable are also released. One satisfaction is a bar to further proceedings on the same cause of action."

*Brown v. Kemp,* 71 Ind. App. 281, 124 N. E. 777, was an action to recover from a liquor dealer and his bondsmen for the death of plaintiff's husband, whose death was alleged to have been caused by defendant's unlawful sale of liquor to him, the husband having been killed by a railroad train while intoxicated. It appeared that the plaintiff had settled with the railroad company and executed an instrument releasing it. Under the authority of *Cleveland, C., C. & St. L. R. Co. v. Hilligoss,* 171 Ind. 417, *supra,* it was held that the release of the railroad company operated to release the defendants, the court stating that although the defendants and the railroad company were acting independently and without concert, still their wrongful acts combined to produce decedent's death and each was liable therefor.

At common law it was not a tort to either sell or give intoxicating liquor to a strong and able bodied man and such act was never held to be culpable negligence that would impose legal liability for damages upon the vendor or donor of liquor. *Cruse v. Aden,* 127 Ill. 231, 234. Under certain circumstances a liability has been imposed by statute not only upon

the person who sells intoxicating liquor but upon the owner of the premises where the liquor is sold. In the instant case there was no concert of action or co-operation between Jan Kerch and appellees to accomplish the particular tort which resulted in appellant being injured. Appellees and Jan Kerch were not joint tortfeasors neither did they inflict upon appellant separate and distinct injuries. The injury appellant received was a single indivisible one as a result of the tortious act of Jan Kerch. The damages he sustained are inseparable and the overwhelming weight of authority applicable under these conditions is that the ancient rule of the release of one operates to release all applies indiscriminately, *i.e.,* to both types of tortfeasors, joint and independent concurring tortfeasors. (*Muse v. De Vito,* 243 Mass. 384, 137 N. E. 730; *McKenna v. Austin,* 134 F. (2d) 659, 669.)

The trial court correctly held that the general release executed by Jan Kerch extinguished appellants' right of action and the judgment appealed from will therefore be affirmed.

*Judgment affirmed.*