ARKEMA, JR., Assistant Attorney General, for Respondent.

PER CURIAM.

(No. 5170—Claim )

RICHARD HENDRIX, a minor, by F. G. HENDRIX, his father and next friend, F. G. HENDRIX and BETTY SUE HENDRIX, Claimant, vs. THE BOARD OF TRUSTEES OF SOUTHERN ILLINOIS UNIVERSITY and THE STATE OF ILLINOIS, Respondents.

*Opinion filed February 14, 1974.*

R. W. HARRIS, Attorney for Claimant.

WILLIAM J. SCOTT, Attorney General; WILLIAM E. WEBBER, Assistant Attorney General, for Respondent.

BURKS, J.

This action was brought on behalf of Richard Hendrix who was a minor, 14 years of age, at the time he sustained personal injuries, allegedly caused by respondents' negligence, giving rise to this claim for damages in the amount of $25,000.

Claimant's injuries occurred when he fell off a high cliff at the edge of a picnic area in Giant City State Park, a park known for its giant rock formations and numerous high bluffs and cliffs.

Claimant had gone to the park on an overnight camping trip as a member of a group of boys and girls between the ages of 11 and 14 who attended a summer

camp sponsored and operated by Southern Illinois University. The S.I.U. summer camp was located at Little Grassy Lake in the immediate vicinity of an in close proximity to Giant City State Park where claimant was injured.

The campers were divided into units of about 8 boys and 8 girls in each unit. Two senior counselors and two junior counselors were assigned to each unit. There were about 7 boy units and 7 girl units in the whole camp, and most of the units were taken on the overnight camping trip to the nearby state park on the date claimant was injured. All of the campers were under the direct supervision and guidance of the counselors assigned to each unit by Southern Illinois University. In claimant's unit the senior counselors were Robert Lee Miller and Charles Fredrick; the junior counselors were Dale Miller and Otis Callis.

The group, including claimant's unit, arrived at the park before noon; set up camp at a site by the baseball diamond; and then had lunch at the lodge. Shortly after lunch, the S.I.U. counselors told the group to move their camp across the road to a picnic area, because the site they originally selected was too crowded with other campers.

There was a shelter building in the picnic area where the group established their new camp site about 1:30 p.m., some 7 or 8 hours before claimant's accident which occurred at about 9:30 p.m. Tents were pitched in an open play area about 100 feet from the point where claimant fell off a bluff. Claimant remembers that one of the counselors had told the group that there were cliffs in the vicinity and to be careful. During some 5 or 6 hours of daylight, claimant played on the swings and ran around the area. He also played on the bluffs but not at the

location where he was injured. As claimant said, the bluffs make a curve like a horseshoe around the area. The cliffs run about a quarter of a mile to the lodge and about a mile in the other direction. Claimant had seen the cliffs on the opposite side of this circular formation, but had not seen the cliff where he fell.

About nightfall, Park Ranger William Yates came by and said that this was a picnic area and not a camping area. Yates then went to the park manager, Jack Porschbacker; told him that all of the normal camping areas were full, and the manager gave permission for the campers to stay in this picnic area all night.

After supper all of the counselors except two, one male and one female counselor, went up to the lodge to dance. The two remaining counselors stayed in the open shelter building studying.

After dark, claimant and some other boys, sitting in a group near the tents, decided to play hide-and-seek. One of the boys was sent up to one of the counselors to get permission to play the game and obtain a light. After getting permission and obtaining a kerosene light, the boys went into the woods nearby to play. After a while, the boy with the light who was "It" caught all the other boys, and they were standing in the woods together when the kerosene light went out. It was the only light they had. Claimant said it was completely dark in the woods; that they could not see the lights of the shelter from where they were; and that he, being the oldest boy in the group, was selected to go get another light from the shelter. Claimant started back "running as fast as he could" on what looked like flat ground or a footpath when he fell and tumbled over the edge of the bluff. Claimant sustained some serious injuries.

The above summary of the facts will be enlarged upon and supplemented from the record as we comment on the following allegations upon which claimant bases this action for damages:

[1] That the Board of Trustees of Southern Illinois University, failed to exercise reasonable care in supervising the campers, including the claimant, under its custody and control; in failing to warn the claimant of the perils of the cliff near the camp site; in failing to station a counselor at the cliff to warn the claimant and light the area of the cliff; and in permitting the campers to lodge for the night in a picnic area normally prohibited for camping.

[2] That the State of Illinois failed to exercise reasonable care in establishing, maintaining and supervising its parks; in failing to warn the campers of the perils of the cliffs near their camp site; in failing to maintain a guardrail at this particular cliff; in failing to light the area near the cliff; and in allowing claimant's group to camp overnight in a picnic area not designed for camping.

[3] That claimant was entirely free from any contributory negligence.

Able briefs and arguments have been presented on both sides of the above issues, obviously the result of commendable energy and research. We will deal with these three issues in their numerical order as listed above.

[1] We believe the evidence supports a finding that the counselors, employed by Southern Illinois University to supervise claimant and the other youths on the overnight camp out, neglected their duty to exercise ordinary

care for the safety of the claimant. We hold that the negligence of the counselors, as agents and servants of S.I.U., is imputed to the Board of Trustees of Southern Illinois University under the doctrine of *respondeat superior,* since the University, like the State itself, can only act through its officers, employees and agents. We would have no difficulty in holding that the negligence of S.I.U., through the acts of its counselors, was the proximate cause of claimant's injuries, were it not for claimant's contributory negligence discussed in [3] below.

In any event, the legal liability of the Trustees of S.I.U., if any, was extinguished by claimant's "covenant not to sue" which he gave the Trustees in return for the payment of $8,900.00 to the claimant from the University through its insurer. After claimant executed the covenant not to sue the Board of Trustees of S.I.U., a separate suit then pending in the Circuit Court of Jackson County [No. 64-L-94] was dismissed, and the Board of Trustees of S.I.U. was dismissed as a respondent in this cause now before us, leaving the State as the sole respondent in this claim.

Claimant argues in his brief that the State is equally liable for the negligence of the S.I.U. counselors and should pay damages to supplement the payment of $8,900.00 which claimant received from S.I.U. in return for his convenant not to sue. Claimant's theory is that the S.I.U. counselors were "agents" of the State.

While it is technically true that all employees of the University are employees of the State, since they are paid by state funds, their selection, employment, amount of salary, supervision, tenure and control are powers committed solely to the Board of Trustees of the University. *Ch. 144, Sec. 658, Ill.Rev.Stat.* These powers establish the Board of Trustees as the principal and the S.I.U.

counselors, employed by the Board, as its agents and not agents of the State. "The principal is the source of power in an agency." *Fredrich* v. *Wolf* 383 Ill. 638.

At the time of claimant's injuries, the S.I.U. counselors were acting solely under the authority and control of the Board of Trustees of the University, as the counselors testified at the hearing.

Both parties acknowledge that the Board of Trustees of S.I.U. is declared by statute [*Ch. 144, Ill.Rev.Stat.*] to be a "body politic and corporate" [§651] with power, inter alia, "to sue and be sued" [§657], including power to compromise and settle suits against the Board, the corporate body of the University, and even employ its own legal counsel in court actions involving the University. *People* v. *Barrett,* 382 Ill. 344.

The *Court of Claims Act* in §8d specifically recognizes the Board of Trustees of Southern Illinois University as a separate state agency which is liable for the negligence of its officers, agents and employees in the course of their employment. This applies to the counselors in the case at bar.

It was in its capacity as "a body politic and corporate" that the Board of Trustees paid to the claimant the sum of $8,900.00 in return for a covenant not to sue and thereby releasing S.I.U. and its Board from any liability arising out of claimant's injuries and for the negligence of its agents, the counselors.

We therefore conclude that, even if there were no evidence of contributory negligence, any liability based on the negligence of the S.I.U. counselors in this cause was released and extinguished, to the State as well as the University, by claimant's covenant not to sue.

This conclusion is not altered by the provisions in

claimant's covenant purporting to reserve claimant's right to proceed against or sue the State. The only conceivable basis for any such further action against the State would be under the doctrine of *respondeat superior* and based on the proposition that the Board of Trustees of S.I.U. is an agency of the State. See *I.L.P. Schools §332* and *People* v. *Barrett* (Supra). If we accept that proposition, we must agree with respondent's contention that the rule in *Holcomb* v. *Flavin,* 34 Ill.2d 552 would apply.

The *Holcomb* case held that a "covenant not to sue" an agent, regardless of the language of the covenant, is indistinguishable from a "release" to the principal where the liability of the principal, if any, is solely derivative and arising only through the doctrine of *respondeat superior.*

The *Holcomb* decision was reaffirmed, fortified, and extended in the more recent case of *Gramm* v. *Armour & Co.* (1971) 271 N.E.2d 52.

As claimant points out, the facts are different in the case at bar, but we find the rule in *Holcomb* and *Gramm* applicable in all cases where the liability of a principal is derivative under the doctrine of *respondeat superior.*

In answering respondent's supplementary brief, claimant contends that there is no *respondeat superior* theory at all involved between the two respondents in this case; that they were each sued on a separate theory of negligence: [1] Board of Trustees of S.I.U. was sued for the negligence of their counselors at the camp. [2] The State of Illinois was sued for its negligence in the maintenance of its park. This argument contained in an amendment to claimant's brief, filed May 5, 1972, was not answered by the respondent. However, as the court interprets claimant's position, claimant regards the

Board of Trustees and the State as joint tort feasors, or independent concurring tort feasors, whose tortious acts concurred in causing claimant's injuries. If so, since the Board of Trustees was released by the claimant, it would appear that the State was also released under the following rule in *Anderson* v. *Martzke* (1970) 266 N.E. 2d 137. At page 140 the Court said:

> "There can be but one satisfaction for a single indivisible injury, and if the injured party makes a settlement with one tort feasor and releases him, that also operates as a release of the other tort feasors, whose tortious acts concurred in the same single, indivisible injury, whether all of the tort feasors engaged or did not engage in concerted action, when their acts produced the same single, indivisible injury, be they strictly joint tort feasors or independent concurring tort feasors. There cannot be a double recovery for a single injury, and one release is a bar to further claims for the same tort. *Tidwell v. Smity*, 27 Ill.App.2d 63, 169 N.E. 2d 157 (1960); *Manthei v. Heimerdinger*, 332 Ill.App. 335, 75 N.E. 2d 132 (1947)."

[2] Notwithstanding the above rule in *Anderson* which would appear to release the State completely, we will comment briefly on claimant's contention that his injuries were caused by the State's alleged negligence in its maintenance of Giant City State Park.

Both sides have submitted a comprehensive review of numerous cases decided by this court involving injuries sustained by visitors to Illinois' vast system of state parks. Many of the cases cited here were discussed in our recent decision in *Mooneyham v. State* (filed November 19, 1973) denying liability for the death of a 12 year old boy who fell from a cliff in Starved Rock State Park and drowned in the Illinois River.

However, no case has come to our attention in which the claimant charged or conceded that the negligence of a separate state agency (here the S.I.U. counselors), in addition to the State's alleged negligence in maintaining its park, were both responsible for claimant's injuries.

Claimant here apparently takes the position that, in spite of the negligence of his counselors, he would not have fallen over the cliff if the State had erected a guard rail at that location which he says was at the end of a footpath; or had lighted this wooded area at night; or had posted danger signs or given claimant warning of the perils of the cliffs; or had refused to allow the group to camp overnight in a picnic area which was not intended to be used for camping.

Considering each of these points, in reverse order, we find that the evidence of negligence points primarily to the counselors. It was they who selected the camp site. After first pitching camp that morning in an authorized camping area, the counselors directed that the camp be moved after lunch to the picnic area which was designed and intended to be used only for daytime activities and not for overnight camping. It was nearly dark when the park ranger discovered that the group was camped in an unauthorized area. The ranger explained this to the counselors. But, since all regular camping areas were full by that time, the ranger obtained permission from the park manager to allow the group to stay for the night.

The record is silent as to whether the park ranger warned the counselors or the youth groups as to the proximity and perils of the cliffs. Such a warning would seem to be a statement of the obvious if given to this group which had spent more than 6 hours playing and exploring in and around their camp site. The record does indicate that the counselors had knowledge of the cliffs since one of them told the claimant there were cliffs in the area and that he should be careful. The ranger did know that the group was under the supervision and control of counselors employed by Southern Illinois Uni-

versity. The record shows that there were 4 counselors for each unit of 8 boys, a ratio of 1 counselor for every 2 boys. This would appear to be reasonable grounds for the park ranger and the manager to assume that the youth groups would be carefully supervised by their counselors, and that this would justify granting permission for the group to stay overnight in the picnic area.

The park manager could not reasonably be expected to anticipate the paucity of supervision that the campers would be given by the counselors; that most of them would leave the camp after dark and go off to dance at the lodge; that the counselors who remained at the camp would stay in the shelter building to study their lessons for summer school; or that any counselor would give permission for the boys to play hide-and-seek in a totally dark woods close to the cliffs.

These acts establish a pattern of negligence on the part of the counselors, but negligence for which the State has been exonerated as stated in [1] above.

We turn then to the remaining question as to whether the State exercised reasonable care in maintaining its park, a duty which this court has fully recognized. *Murray v. State of Illinois*, 24 C.C.R. 339; *Hansen v. State of Illinois*, 24 C.C.R. 102; *Stedman v. State of Illinois*, 22 C.C.R. 446; *Kamin v. State of Illinois*, 21 C.C.R. 467; *Finn v. State of Illinois*, 24 C.C.R. 177; *Pulizzano v. State of Illinois*, 22 C.C.R. 234 (1946); *Mooneyham v. State of Illinois* (Supra) No. 6412.

All of the above cases involve claimants who were injured in a state park by falling from a cliff or into a hole or a canyon. Most of the cases, like the case at bar, charge the State with negligence in failing to maintain guard rails or warning signs along a trail or foot path at

points of potential danger. Our decisions recognize such a duty on paths and trials that have been established, controlled and maintained by the park and shown on its maps, as in the case of *Murray* and *Hansen* (Supra). We have felt that it would be an unreasonable hardship to impose such a duty to so maintain every foot path created by public usage, like the path on which the claimant here was running when he fell. In the *Hansen* case, the trail was originally established by public usage but the park had assumed control of the path by showing it on a map furnished to hikers and by posting a sign on the trail warning, "Dangerous-loose rocks".

Although the park ranger knew of the existence of the path on which claimant was running, the park had never recognized it as an established trail on which public safety would require handrails, warning signs or artificial light. It must be remembered that the area was intended to be used in daytime and not at night.

Giant City State Park contains miles of cliffs and bluffs in its area of over 2,000 acres. The legislature intended that such nature preserve parks be maintained in their rugged natural state so that the public could view the natural beauty of the area. Ch. 105, Sec. 465 et.seq., *Ill.Rev.Stat.* To require the park to place guard rails or warning signs at the end of every foot path which the public may beat to the edge of a cliff would not only impose unreasonable burden on the Department of Conservation, but would be contrary to the legislature's intent.

As we said in the above cited cases of *Finn, Stedman* and *Kamin*, the State is not an insurer of patrons using its park facilities. The invitation to use a state park is in no sense an absolute one. It is rather an invitation to use the particular facilities in the manner in which and for

the purposes of which they were designed and intended. The state is not required to maintain its parks in such condition that patrons may wander at will over each and every portion thereof.

In *Kamin* (Supra), we announced the rule that a determination of what constituted reasonable care in the maintenance of a trail or pathway in a state park depended upon the location, character and extent of the use to which the particular trail was put. We also held that the state was under no duty to maintain guardrails along the side of the trail at the point where the adjoining canyon was readily visible to users of the trail. In the instant case, although it was dark, claimant and all of his companions knew that a canyon was in the vicinity.

[3] Finally, this court is bound by the well established rule of law in Illinois that a claimant must be free from contributory negligence in order to recover damages. This rule was carefully re-examined and upheld by the Illinois Supreme Court in *Maki* v. *Frelk* (1968) 40 Ill.2d 193 reversing the Appellate Court which had attempted to change the *contributory negligence* rule and adopt the *comparative negligence* doctrine. [*85 Ill.App.2d 439*] The law remains unchanged.

We are mindful of the fact that claimant was 14 years old at the time of his unforunate accident, and will apply the test of negligence correctly stated in claimant's brief as follows:

"Although a child of 14 may be held to the same standard of care for his own safety as an adult, still his age, intelligence and experience shall be considered. *Seaburg v. Williams 16 Ill.App.2d 295, 300 (1958)*; *Mascalinnas v. Chicago and W.I.R. Company, 318 Illinois at 142.*"

The record indicates that the claimant was an alert young man of normal intelligence. Although he was not an experienced camper, he must have gained some

knowledge of the area during the 6 or 7 daylight hours he spent playing in the vicinity of the camp site and on the bluffs to the southeast of where he fell. He remembers being warned by a counselor that "there were bluffs in the vicinity" and admonished "to be careful". Under these circumstances claimant would be contributorily negligent if he failed to exercise ordinary care for his own safety. Ordinary care is stated to be that care and foresight to avoid danger which a person of ordinary prudence, caution and intelligence would usually exercise under the same or similar circumstances. *I.L.P. Negligence § 123.*

Claimant testified that he was standing on a footpath in the woods when the kerosene lantern went out. It was so dark that he could not see the lights from the shelter building. The boys had no light of any kind. Being the oldest boy, claimant was selected to go back to the shelter and get another lantern. Claimant thought that the path led back to the shelter. He could not see far ahead. Nevertheless, being in a hurry to get back, he started running as fast as he could, and suddenly he fell over the cliff. We believe a reasonably cautious person, even if oblivious to the cliffs, would foresee the danger of running through an unfamiliar woods in the darkness as claimant described it. He could have struck a tree limb or log or other unknown hazards.

We believe that by running in the dark of night through the woods, being unfamiliar with the area, but having been warned that there were cliffs in the vicinity, claimant displayed a reckless disregard for his own safety. At least he did not exercise the degree of care required by the above rule to establish freedom from any contributory negligence.

For the reasons stated above, we must deny this

claim. It is, therefore, unnecessary to comment on the seriousness or extent of the injuries claimant sustained in this unfortunate and regrettable accident. The claim is denied.