DAVID M. ALBERSTETT *et al.*, Plaintiffs, *v.* COUNTRY MUTUAL INSURANCE COMPANY *et al.*, Defendants.—(PHILIP R. CANFIELD, M.D., *et al.*, Third-Party Plaintiffs-Appellants, *v.* ROCKFORD MEMORIAL HOSPITAL *et al.*, Third-Party Defendants-Appellees.)

Second District No. 78-130

Opinion filed December 7, 1979.

Jeffrey Cole and Abigail K. Spreyer, both of Jerome H. Torshen, Ltd., and Garretson & Santora, both of Chicago, for appellants.

Kenneth W. Traum, of Thomas, Kostantacos, Traum & Reuterfors, of Rockford, James P. Dorr, of Wildman, Harrold, Allen & Dixon, and Rudolf G. Schade, Jr., and Stanley J. Davidson, both of Hinshaw, Culbertson, Moelmann, Hoban & Fuller, both of Chicago, for appellees.

Mr. PRESIDING JUSTICE GUILD delivered the opinion of the court:

This appeal emerges from a personal injury-malpractice action brought by the survivors and the estate of a deceased 9-year-old boy. The decedent, Scott David Alberstett, a minor, fell and suffered a severe laceration of his left knee while doing chores on the farm of his grandfather, Merle J. Alberstett. He was taken to the Durand Health Center where the wound was cleaned and sutured by Dr. Canfield. Twenty-four hours later his mother called Dr. Bazuin at the Health Center, who suggested that she loosen the bandages and give Scott some aspirin. The next evening Scott's mother and father took him to the emergency room of the Rockford Memorial Hospital where he was admitted with a diagnosis of cellulitus. The following day Dr. Webb consulted with Dr. Stohl and the diagnosis was changed to that of gas gangrene, for which he was treated. Later in the day Scott was transferred to the Lutheran General Hospital in Park Ridge, Illinois, where he died five days later.

In June 1978 Scott's parents filed suit against the grandfather and his liability insurer, Country Mutual Insurance Company. The complaint therein was amended three times. In the first amended complaint Dr. Canfield, the original treating physician, was named as a co-defendant. In the third amended complaint Dr. Bazuin was added as a co-defendant. Doctors Canfield and Bazuin (hereinafter third-party plaintiffs) filed a third-party complaint against Rockford Memorial Hospital and Drs. Webb and Stohl (hereinafter third-party defendants) who were not defendants in the original action, in which they alleged that Dr. Stohl was guilty of malpractice in failing to recognize the seriousness of Scott's

injury. The third-party complaint also alleged that Drs. Webb and Stohl and the Rockford Memorial Hospital were negligent in attempting to treat the gangrenous condition at the Rockford Hospital, knowing that the hospital did not have the proper facilities for effective treatment. That complaint sought equitable contribution of damages which might be imposed in the original action upon the third-party plaintiffs but which, in fact, were caused by the alleged malpractice of the third-party defendants.

Subsequent to the filing of the third-party complaint third-party plaintiffs, along with all other original defendants, entered into a release from the original plaintiff for $50,000 and, as a consequence, that case was dismissed. The "release" provides in pertinent part as follows:

"RELEASE

For the sole consideration of Fifty Thousand ($50,000.00) Dollars, the receipt and sufficiency whereof is hereby acknowledged, the undersigned do by the execution hereof release, remise and forever discharge Continental Insurance Company, Philip R. Canfield, M.D., Charles H. Bazuin, M.D., Merle J. Alberstett and Country Mutual Insurance Company from and against any and all claims of any nature whatsoever arising out of or in any way pertaining to that certain occurrence on January 13, 1976, wherein Scott D. Alberstett fell, lacerating his left knee on certain farm premises owned by Merle J. Alberstett and thereafter died of said injury and complication therefrom.

It is understood that Continental Insurance Company, Philip R. Canfield, M.D., Charles H. Bazuin, M.D., Merle J. Alberstett and Country Mutual Insurance Company expressly deny any liability on their part causing or contributing to the aforementioned accident, resulting injuries, death and damages therefrom and that the sum of Fifty Thousand ($50,000.00) Dollars is paid for the purpose of avoiding litigation and shall not be construed as an admission of liability on their part. This Release may be pled as an absolute bar to any action hereafter instituted against Continental Insurance Company, Philip R. Canfield, M.D., Charles H. Bazuin, M.D., Merle J. Alberstett and Country Mutual Insurance Company, their heirs, executors, administrators, agents and assigns."

After the dismissal of the original complaint and in response to the third-party defendants' motion to dismiss the third-party complaint, the trial court issued a memorandum ruling in which he found that the third-party plaintiffs and third-party defendants were not joint tortfeasors and that the release procured by the third-party plaintiffs did not bar a possible action by the original plaintiffs against the third-party

defendants. The trial court further found that the third-party complaint was a purely derivative action and since the original plaintiffs had not assigned their right of action to the third-party plaintiffs, no cause of action existed. Based on this memorandum, the trial court dismissed the third-party complaint. The third-party plaintiffs appeal.

■■ ■ Illinois retains the traditional rule that the release of one joint tortfeasor releases all. (*Guth v. Vaughan* (1923), 231 Ill. App. 143; *Tidwell v. Smith* (1960), 27 Ill. App. 2d 63, 169 N.E.2d 157.) The same rule applies to those concurrently liable for a single indivisible injury, not merely to those who are technically joint tortfeasors. (*Tidwell v. Smith*; *Witek v. Leisure Technology Midwest, Inc.* (1976), 39 Ill. App. 3d 637, 350 N.E.2d 242; *Manthei v. Heimerdinger* (1947), 332 Ill. App. 335, 75 N.E.2d 132.) Thus, a document such as this has been held to be a bar in a subsequent suit against a malpracticing doctor. (See, *e.g.*, *Guth v. Vaughan*.) In effect, a release which is intended to release all the parties acts as a satisfaction as a result of this rule. It is a final bar because all of the plaintiff's injury is compensated for in the eyes of the law and, because of this, those tortfeasors paying for the satisfaction can be said to have paid as well for any damages, if any, caused by nonpaying negligent parties.

There is nothing to suggest that Scott has not received what was intended as full compensation for his injuries in settlement of this litigation and that said settlement was not entered into in good faith or was unreasonable.[1] The document does not reserve any rights against other parties or contain any restrictions as to the effect of the release. At the time the release was signed the full extent of the injuries was known as was the potential action against the third parties. As between the parties, Prosser would take the release as *prima facie* acknowledgment as satisfaction and place the burden on the releasor to prove that it was not. (Prosser, *Torts*, §49, at 304 (4th ed. 1971).) Here, as previously noted, the release has not challenged the effect of the document, and the question is raised by a third-party defendant as a matter of law and without argument.

The basic question presented is whether one who allegedly causes further loss or damage by malpractice is liable for equitable contribution to prior tortfeasors for the share of such loss or damage caused by such.

Based on the premise that the plaintiff had executed a binding release which was intended to be in full satisfaction of plaintiff's claims for injuries against all persons whether joined as parties or not, we reach the question of whether equitable apportionment, as developed in *Gertz v. Campbell* (1973), 55 Ill. 2d 84, 302 N.E.2d 40, applies. The issue then would be whether equitable apportionment, as developed in *Gertz*,

---

[1] See Appel & Michael, Contribution Among Joint Tortfeasors in Illinois, 10 Loy. Chi. L.J. 169, 197 (1979).

should be extended to permit prior allegedly malpracticing doctors to recover from subsequent allegedly malpracticing doctors a pro rata share of the cost of the release paid by the first doctors to the injured party.[2]

The third-party defendants argue that *Gertz* is factually inapplicable, primarily because the third-party plaintiffs are not the original tortfeasors, as in *Gertz*, but are prior malpracticing doctors. But *Gertz* emphasized two things about the relationship between the tortfeasors in that case: (1) that the first tortfeasor be found liable at law for the negligence of the second party, and (2) that the first tortfeasor lacks effective control over the actions of the second party. These factors are fulfilled in this case as well.

■■ It may be true, as appellees argue, that a doctor has the continuing duty to care for the patient. But that duty cannot be extended to make him liable for the negligence of doctors sought out for treatment by the plaintiffs independently. The Alberstetts took Scott to the hospital on their own initiative. They chose the hospital and the doctors that would care for the boy. Although it is probable that this was the best course of action, in so doing they ended the doctor-patient relationship with Doctors Bazuin and Canfield. Thus, Doctors Canfield and Bazuin no longer had the right to treat Scott Alberstett. Therefore, it is not fair to consider that they continue to owe a duty to care for him. More importantly for the *Gertz* analysis, Canfield and Bazuin cannot be said to have controlled the professional actions over the course of the treatment which the third-party defendants applied to Scott Alberstett.

On the other hand, Canfield and Bazuin have been charged for the damages caused by the negligence, if any, of the hospital and doctors (third-party defendants). As it is foreseeable that plaintiff will seek out medical aid to correct the injury done through the negligence of the original tortfeasor, so it is foreseeable that plaintiff will seek alternative medical aid to correct an injury aggravated by the negligent malpractice of the first doctors. Thus, because the law makes each person liable for the foreseeable results of his negligence, it is logical that both the original tortfeasor and the negligent doctors are liable at law for the negligent acts of subsequent malpracticing doctors. Several cases in other jurisdictions have held that the usual tort rules should apply to successive doctors accused of malpractice. See *Corbett v. Clarke* (1948), 187 Va. 222, 46 S.E.2d 327; *Cokas v. Perkins* (D.C. Cir. 1966), 252 F. Supp. 563; *Naccarato v. Grob* (1970), 384 Mich. 248, 180 N.W.2d 788.

■ Thus we hold that where certain tortfeasors effect a good-faith settlement with the plaintiff by means of a release intended to cover all

---

[2] In *Stevens v. Silver Manufacturing Co.* (1977), 70 Ill. 2d 41, third-party plaintiff action allowed for contribution against a third-party defendant joint tortfeasor where a settlement had been made by third-party plaintiff.

injuries, these settling tortfeasors may maintain a third-party action to recover from subsequent allegedly malpracticing doctors the pro rata share of the damages caused by their acts. (See *Nogacz v. Proctor & Gamble Manufacturing Co.* (1976), 37 Ill. App. 3d 636, 347 N.E.2d 112, where the record supported the settlement, and the court determined that it was a good faith settlement which was justified on the basis of the potential liability to the plaintiff by the defendants, third-party plaintiffs.) In this manner we are able to maintain equality of treatment between settlements resolved through court judgments and through informal settlement procedures. In this manner the two primary interests of tort law in this situation are balanced: (1) full compensation to the victim, or what he considers to be full compensation, and (2) payment by each negligent tortfeasor of those damages caused by his negligence. We believe that the result reached by this decision conforms to the law as interpreted in *Gertz* and coincidently it conforms to the policy recently adopted by our legislature in "An Act in relation to contribution among joint tortfeasors" (Pub. Act. 81-601). The trial procedure will be similar to that required by the last mentioned legislation, although it is understood that this decision is in no way based thereon.

For the foregoing reasons we find that the third-party complaint should not have been dismissed, and we reverse and remand for further proceedings not inconsistent with this opinion.

Reversed and remanded with instructions.

SEIDENFELD and WOODWARD, JJ., concur.