JAMES E. SCHREMPF, Special Adm'r of the Estate of Victor G. Null, Deceased, for the benefit of Tanya Kay Null *et al.*, Minors, Plaintiff-Appellee, *v.* NEW ENGLAND MUTUAL LIFE INSURANCE COMPANY *et al.*, Defendants-Appellants.

Fifth District   No. 81-178

Opinion filed January 5, 1982.—Rehearing denied February 24, 1982.

Robert F. Quinn, of Wood River, and P. Terence Crebs and J. Reed Johnston, Jr., both of Peper, Martin, Jensen, Maichel & Hetlage, of St. Louis, Missouri, for appellant New England Mutual Life Insurance Company.

Harold A. Donovan, of Donovan, Hatch and Constance, of Belleville, for appellant William S. Comfort.

James T. Williamson, of Williamson, Webster and Blaine, Ltd., of Alton, and Don B. Sommers and Prudence W. Kramer, both of Don B. Sommers, Inc., of St. Louis, Missouri, for appellee.

JUSTICE WELCH delivered the opinion of the court:

Shirley Ann Null, widow of Victor G. Null, brought this wrongful death action in 1980 in the Circuit Court of Madison County, on behalf of the two Null children, against New England Mutual Life Insurance Co. and its agent William S. Comfort. Subsequently, James E. Schrempf, special administrator of the estate of Victor G. Null, deceased, was substituted for Shirley Ann Null as plaintiff in these proceedings. The complaint alleged that the defendants negligently allowed Ronald and James Calvert to maintain large amounts of insurance on Victor Null's life, thereby contributing to a plan in which the Calverts had Victor Null murdered in the hope of receiving the insurance proceeds. Much litigation has occurred as the aftermath of this scheme, leading to several published opinions by the Federal courts in Missouri. We have adapted and expanded the account of relevant transactions as described in *New England Mutual Life Insurance Co. v. Calvert* (E.D. Mo. 1978), 459 F. Supp. 979, and *United States v. Calvert* (8th Cir. 1975), 523 F.2d 895.

Prior to July 19, 1972, Victor Null sought financial backing for the development of an invention, a rotary engine. Ronald and James Calvert

agreed to provide the financial backing. Victor Null and the Calverts agreed to procure life insurance upon the life of Victor Null to protect the investment of the Calverts. Null and the Calverts made application to New England Mutual Life for $500,000 insurance; William S. Comfort and Harold L. Whitney were the agents of New England with whom Null and the Calverts dealt.

Frank W. French, Jr., assistant vice-president for New England, advised Whitney, by telegram-teletype, that New England would only issue $150,000 "corporate insurance" but would be willing to issue $100,000 personal insurance upon receipt of a new application by Null. William Comfort advised Null and Ronald Calvert of this decision, and further advised them that were Null to purchase a personal life insurance policy, he would be the owner of the same and would therefore have the right to assign the policy to the Calverts. Null agreed to purchase $100,000, with accidental death benefits. His estate was named as beneficiary thereof; however, Null contracted for this insurance solely for the reason that he wanted to assign the same to the Calverts, thus providing the security that the Calverts desired before they would invest in Null's invention.

On July 21, 1972, Null made application for the personal life insurance policy. On July 24, 1972, Null, accompanied by Ronald Calvert, went to the offices of the Whitney agency. Calvert delivered a check signed by his father, James Calvert, in the sum of $5,616. This sum represented the premium due on the $150,000 business insurance policy and the premium for the $100,000 personal life insurance policy. On this same date, Null executed an "Absolute Assignment and Change of Beneficiary Request," making the Calverts the owners and beneficiaries of the $100,000 personal insurance policy. New England's home office did not receive the assignment and change of beneficiary form until September 5, 1972.

In August of 1972, Ronald Calvert contacted Bowes and Company, an insurance broker, and asked if it would consider writing a $2,000,000 accident policy on the inventor, with a partnership, which included the Calverts, Null and several others, to be named as beneficiary. Calvert filled out the appropriate applications, and, after some communications with Lloyd's of London, Bowes and Company received a telex from London on September 13 indicating "bound coverage."

On November 9, 1972, Null's body was found in his East St. Louis workshop. He had been shot four times in the head with a .22-caliber firearm. There were no signs of forced entry, and nothing was reported missing, although the office had the appearance of being ransacked. The murderer has never been found.

Ronald Calvert was charged with and convicted of 12 counts of mail fraud in connection with the insurance applications. He was sentenced to

45 years' imprisonment. (*United States v. Calvert* (8th Cir. 1975), 523 F.2d 895). As the court noted in *New England Mutual Life Insurance Co. v. Calvert* (E.D. Mo. 1978), 459 F. Supp. 979, 980, "the Calverts were not interested in procuring the insurance to protect their investment, but instead procured the same as part of their scheme to obtain the proceeds thereof through the murder of Victor Null."

New England and Lloyd's filed separate complaints for declaratory judgment, seeking to declare the respective insurance policies void. In the New England action, brought in the Federal District Court for the Eastern District of Missouri, Shirley Null counterclaimed to recover the proceeds from the personal insurance on Victor Null. Relying on the evidence in Ronald Calvert's conviction, the district court granted summary judgment for New England on its complaint and on the counterclaim. (*New England Mutual Life Insurance Co. v. Calvert* (E.D. Mo. 1976), 410 F. Supp. 937.) Holding that summary judgment was inappropriate, the Eighth Circuit Court of Appeals reversed that order and remanded the case for a full trial. (*New England Mutual Life Insurance Co. v. Null* (8th Cir. 1977), 554 F.2d 896.) Following trial, the district court again entered judgment in favor of New England on its complaint and on the counterclaim. (*New England Mutual Life Insurance Co. v. Calvert* (E.D. Mo. 1978), 459 F. Supp. 979.) The Eighth Circuit affirmed. *New England Mutual Life Insurance Co. v. Null* (8th Cir. 1979), 605 F.2d 421.

The Lloyd's litigation was terminated much sooner than the New England case. On July 8, 1975, the following release was executed in favor of Lloyd's:

"* * * in consideration of the payment of the sum of One Hundred Thousand Dollars ($100,000) by said Releasee, and other good and valuable consideration, receipt whereof is hereby acknowledged, I, Shirley Ann Null, individually, as Administratrix of the Estate of Victor N. Null, Deceased, and as Guardian of the Estates of the two minor children Tanya Null and Tamara Null, do hereby remise, release and forever discharge, and by these presents do for my heirs, executors, administrators and assignors remise, release and forever discharge Releasees of and from any and all manner of action or actions, cause or causes of action, controversies, damages, claims and demands whatsoever, in law or in equity, which I now have against the said Releasees or any of them, or which I ever had or which I may have, or which my heirs, executors, administrators or assignees can, shall or may have upon or by reason of any matter, cause or thing whatever, from the beginning of the world to the date of these presents, and in particular, but without limiting the generality of the foregoing, of and from any action, cause of action, controversy, damages, claims or

demands based upon or in any manner arising out of or in connection with or as a result of the acceptance by the Releasees of the insurance on the life of Victor G. Null, evidenced by the Certificate of Insurance No. 33393 and the said Companies' Cover Note EC-721288, it being understood and agreed that the acceptance of said sum is in full accord and satisfaction of a disputed claim and that the payment of said sum is not an admission of liability.

I acknowledge that I am represented by my own counsel and that in executing this Release I have relied on his advice, and I intend to be legally bound by its terms."

The release contained no reservation of rights against New England.

After the present Madison County wrongful death action was instituted, New England filed a motion to dismiss the complaint on several grounds. Defendant Comfort joined in this motion. The trial court denied the motion to dismiss, but certified two issues for interlocutory appeal by permission pursuant to Supreme Court Rule 308 (Ill. Rev. Stat. 1979, ch. 110A, par. 308). The questions before this court are:

(1) whether the complaint is barred under Rule 13(a) of the Federal Rules of Civil Procedure because of the plaintiff's failure to assert it in the proceedings in the Missouri Federal courts, and,

(2) whether the complaint is barred by the release given to Lloyd's. We need discuss only the second issue.

In support of its contention that the release executed in favor of Lloyd's benefits them as well, New England and Comfort point to the rule that the release of one joint or concurrent tortfeasor acts to release all tortfeasors. The plaintiff responds that there is no showing that New England, Comfort and Lloyd's were joint or concurrent tortfeasors and that the release given to Lloyd's only covered contractual claims, not tort claims.

■■ Illinois has long adhered to the theory that a release given to one of several joint or independent concurrent tortfeasors acts to bar suit against the other tortfeasors. (*Manthei v. Heimerdinger* (1947), 332 Ill. App. 335, 75 N.E.2d 132; *Anderson v. Martzke* (1970), 131 Ill. App. 2d 61, 266 N.E.2d 137.) This theory, it should be noted, applies to those concurrently liable for a single indivisible injury as well as to those who are technically joint tortfeasors. (*Alberstett v. Country Mutual Insurance Co.* (1979), 79 Ill. App. 3d 407, 398 N.E.2d 611.) The critical question is then whether the injury is single and indivisible, and not whether the tortfeasors acted in concert, which it is apparent Lloyd's, New England and Comfort did not do.

Accepting as true plaintiff's allegations against New England and Comfort, the misconduct of which they were guilty lay in allowing the Calverts to obtain $150,000 of business insurance and $100,000 of double

indemnity personal insurance on Null's life. This misconduct, it is alleged, aided the machinations of the Calverts and contributed to Null's death.

But, if this is so, then Lloyd's must have also been negligent in issuing a much greater amount of insurance to the Calverts after the New England policies had been issued. If the reasoning of the complaint is continued, then the negligence of New England, Comfort and Lloyd's converged at the point at which the insurance provided enough of an incentive to the Calverts to have Null murdered, and the ultimate result of that negligence was indeed the death of Victor Null. Any injury for which the plaintiff could possibly be compensated therefore derives from a single source—the solicitation by the Calverts of the killing of Victor Null.

Plaintiff's injuries are thus truly single and indivisible. For that reason, if Lloyd's were given a release which covered the wrongful death action, then a similar action would be barred against the present defendants. This leads us to plaintiff's argument that the release extended only to contractual claims against Lloyd's and not to tort claims.

The pertinent language states that Lloyd's would be released "of and from any action, cause of action, controversy, damages, claims or demands based upon or in any manner arising out of or in connection with or as a result of the acceptance by the Releasees of the insurance on the life of Victor G. Null." The release is not limited to claims asserted in the declaratory judgment action brought by Lloyd's.

■■■ It is certainly true that the intention of the parties controls the scope and extent of the release. (*Gladinus v. Laughlin* (1977), 51 Ill. App. 3d 694, 366 N.E.2d 430.) We do not see any evidence in the release that the parties intended to limit its effect to contractual claims. The language of that release is broad and does not, by its terms, make any reference to contractual claims or to the pending Lloyd's litigation. Nor does it specifically exclude tort claims. It bars actions connected with the acceptance by Lloyd's of insurance on the life of Victor Null. As this is the precise conduct upon which any wrongful death action against Lloyd's would be based, we believe that such an action would be barred by the release.

Because the release given to Lloyd's is binding on the plaintiff to this action, covers tort actions against Lloyd's and does not reserve rights against New England and Comfort, and because Lloyd's, New England and Comfort would be independent concurrent tortfeasors under the legal theories advanced in this complaint, the release bars the present action. The decision of the Circuit Court of Madison County is therefore reversed, and judgment is entered in favor of defendants New England and Comfort.

Reversed.

KASSERMAN and HARRISON, JJ., concur.