FIFTH DIVISION

October 9, 1998

No. 1-97-3616

JERRY CHERNEY and ROBERT GAINSBERG,   ) Appeal from the

   ) Circuit Court of

Plaintiffs-Appellees,   ) Cook County.

v.   )

   )

LARRY SOLDINGER,   )

   )

Defendant-Appellant.   )

--------------------------------------) No. 94 L 13446

LARRY SOLDINGER,   )

   )

Defendant/Third-Party Plaintiff, )

v.   )

   )

LEGAL FINANCIAL ASSOCIATES, INC. and  )

EAGLE INSURANCE AGENCY, INC.,   ) The Honorable 

   ) Richard Neville,

Third-Party Defendants.   ) Judge, Presiding.

JUSTICE HOURIHANE delivered the opinion of the court:

This matter comes before the court as an interlocutory appeal pursuant to Supreme Court Rule 308.  155 Ill. 2d R. 308.  We are asked to determine whether the unqualified release of one of two parties who caused a monetary loss to plaintiffs precludes a claim by plaintiffs against the other party for breach of fiduciary duty, considering the provisions of the Joint Tortfeasor Contribution Act (Act) (740 ILCS 100/2 (West 1996), and the relevant common law.  Because we answer in the affirmative, we reverse that part of the circuit court's order denying defendant's motion for summary judgment as to count I of plaintiffs' first amended complaint.

BACKGROUND

Count I of the first amended complaint alleges that plaintiffs Jerry Cherney (Jerry) and Robert Gainsberg (Gainsberg) are the shareholders, officers and directors of Eagle Insurance Agency, Inc. (Eagle) and Legal Financial Associates, Inc. (LFA).  Until September 1993, Burton Cherney (Burton), Jerry's brother, was also an officer and director of the corporations.  Defendant Larry Soldinger performed accounting services for the corporations.

In 1985, plaintiffs discovered that Burton had obtained $63,000 in excess advance payments from the corporations.  Burton executed a promissory note in that amount, payable to Eagle, as evidence of his indebtedness.  At this time, plaintiffs instructed defendant to make sure that Burton's advance account never exceeded plaintiffs' advance accounts by such large amounts, and that defendant advise plaintiffs if they needed to draw additional compensation so as to equalize all parties' compensation for a particular year.  

Plaintiffs claimed that defendant, in violation of these instructions and in breach of his fiduciary duties to the corporations and its shareholders, failed to advise plaintiffs that Burton was receiving excess salary and compensation and that the $63,000 note Burton executed had been reduced to $23,000 through the payment of excess monies.  Plaintiffs further claimed that defendant had prepared the corporate books and records to disguise these transactions.

Plaintiffs alleged other theories of recovery in counts II, III, and IV, on which summary judgment was granted in favor of defendant.  The trial court's ruling on these counts is not a part of this appeal.

Prior to the instant litigation, Burton had filed a complaint in the chancery court against Jerry and Gainsberg, seeking declaratory relief, specific performance, and an accounting.  Burton alleged that the parties were equal shareholders of Eagle and LFA and that, contrary to certain shareholder agreements, in October 1992, Jerry and Gainsberg removed him as an officer and employee of the corporations.

Jerry and Gainsberg filed a counterclaim against Burton for
 breach of fiduciary duty.  They alleged that, without their prior consent, Burton borrowed $63,000 from Eagle's funds, executed a promissory note to repay the loan, and reduced the principal balance on the note to $23,000 solely through accounting adjustments and not by directly paying any funds to Eagle.  They further alleged that Burton drew salary and advances far exceeding his share and contrary to the best interests of the corporation.

Jerry, Gainsberg and Burton settled their dispute and executed a "Mutual Release".  The release states that, subject to certain exceptions not relevant here:

"[E]ach of Eagle ***, [LFA] ***, Jerry *** and *** Gainsberg *** hereby releases and forever discharges Burton *** from any and all causes of action, contracts, agreements, debts and promises, whether known or unknown, which any of Eagle, LFA, Jerry, [or Gainsberg] *** now has or ever had, or may have in the future, by reason of any matter, event, cause or thing occurring prior to the date of this Mutual Release
.  The release *** includes, without limitation, a release and discharge of Burton from any and all liabilities and obligations (a) to Eagle or LFA for any advances, borrowings, loans or other sums due to Eagle or LFA, (b) to any party as a result of any matter, event cause or cause of action alleged in or which could have been alleged in the Counterclaims in the action entitled 
Burton Cherney v. Jerry Cherney, et al.
, No. 93 CH 964, pending in the Circuit Court of Cook County, Illinois ***, and (c) under or pursuant to any employment, shareholders or other agreement relating to Eagle or LFA."

Defendant Soldinger moved for summary judgment in the instant litigation, arguing that plaintiffs' unqualified release of Burton in the prior suit, with respect to the same loss that is the subject of the present litigation, also released him.  Defendant asserted that this result follows from application of the common law rule that the release of one joint tortfeasor releases all others.  
Porter v. Ford Motor Co.
, 96 Ill. 2d 190, 195, 449 N.E.2d 827 (1983).  According to defendant, although the Act changed this common law rule by making the release of one joint tortfeasor ineffective against any other unless its terms provide otherwise (740 ILCS 100/2 (West 1996)), the Act does not apply to claims for breach of fiduciary duty (
People ex rel. Hartigan v. Community Hospital
, 189 Ill. App. 3d 206, 213, 545 N.E.2d 226 (1989)) and does not govern the release executed by plaintiffs' and Burton.  Thus, defendant reasoned that the common law rule must be applied.  Under this rule, the defendant argued, the release of a fiduciary duty claim against one person also releases such claims against others, at least where there is one indivisible injury.  See 
McCormick v. McCormick
, 180 Ill. App. 3d 184, 536 N.E.2d 419 (1988). 
 

 
Plaintiffs argued that the common law rule, which provides that the unqualified release of one joint tortfeasor releases all others, was abolished with adoption of the Act.
  To the extent the common law rule has survived, plaintiffs maintained that it is not applicable here because a breach of fiduciary duty is not a tort, and because there is not a single indivisible injury.  Plaintiffs urged application of a "modern approach", permitting the release only of those persons specifically identified in the release.  See 
Alsup v. Firestone Tire & Rubber Co.
, 101 Ill. 2d 196, 461 N.E.2d 361 (1984).

The circuit court denied defendant's motion for summary judgment as to plaintiffs' claim for breach of fiduciary duty.  The court ruled that such a breach is not a tort for purposes of the Act, and that the release of Burton did not act as a release of defendant.  The circuit court also denied defendant's motion for reconsideration, but certified the following question for review (155 Ill. 2d R. 308):

"When plaintiffs have released one of two persons who caused an injury to the plaintiffs without any reservation of rights against the second person who also caused injury to the plaintiffs, does the unqualified release of the first person preclude a claim against the second person for an alleged breach of fiduciary duty because, 
inter alia
, breach of fiduciary duty is not a 'tort' under the *** Act *** and, therefore, an unqualified release of one potentially liable person constitutes a release of the second such person under Section 2(c) of the *** Act and the common law."

   ANALYSIS

At common law, the unconditional release of one of two or more joint tortfeasors released the other tortfeasors, even though the latter were not a party to the release or specifically identified in the release, unless a contrary intent appeared from the face of the instrument.  
Porter
, 96 Ill. 2d at 195; 
McCormick
, 180 Ill. App. 3d at 204; 
Schrempf v. New England Mutual Life Insurance Co.
, 103 Ill. App. 3d 408, 412, 431 N.E.2d 402 (1982); 
Tidwell v. Smith
, 27 Ill. App. 2d 63, 72, 169 N.E.2d 157 (1960).  The law presumed that where a general release, without restriction or reservation, was given by the injured party to one of several joint wrongdoers, it was given in full satisfaction for the injury.  
Manthei v. Heimerdinger
, 332 Ill. App. 335, 347-48, 75 N.E.2d 132 (1947).  

The common law rule applied not only to those who were technically joint tortfeasors, but to wrongdoers whose conduct produced the same single injury.  
Tidwell
, 47 Ill. App. 2d at 72; 
Chapin v. C. & E.I.R.R. Co.
, 18 Ill. App. 47, 50 (1885).  The rule was also applied outside of the tort area to co-obligors on a contract.  
Clark v. Mallory
, 185 Ill. 227, 56 N.E. 1099 (1900);  
Parmelee v. Lawrence
, 44 Ill. 405 (1867).  

The common law rule was intended to prevent multiple recoveries for a single claim.  
Diamond Headache Clinic, Ltd. v. Loeber Motors, Inc.
, 172 Ill. App. 3d 364, 369, 526 N.E.2d 599 (1988).  As this court explained:

"'It is an ancient doctrine that a release to one joint trespasser, or a satisfaction from him, discharges the whole.  The same doctrine applies to all joint torts, and to torts for which the injured party has an election to sue one or more parties severally. . . . If it were not so, a party having a claim against several persons on account of a single tort might sue one and settle the suit, receiving damages; he might then sue another and settle in the same way, and repeat the proceeding as to all but one, and then sue him and recover the whole damage, as if nothing had been paid by the others.  A door would thus be opened to a class of speculations that do not deserve encouragement.  The rule of law which makes one satisfaction or release a bar to further claims for the same tort is founded in good reason.'"  
Manthei
, 332 Ill. App. at 350, quoting 
Brown v. City of Cambridge
, 3 Allen 474 (Mass. 1862).

Notwithstanding the "good reason" underlying the common law rule, its application frequently caused the unintended discharge of joint tortfeasors.  
Alsup
, 101 Ill. 2d at 201.  A purpose of the Act was to change this harsh result.  
Alsup
, 101 Ill. 2d at 201.  Thus, section 2(c) of the Act provides:

"When a release or covenant not to sue or not to enforce judgment is given in good faith to one or more persons 
liable in tort arising out of the same injury or the same wrongful death, 
it does not discharge any of the other tortfeasors
 from liability for the injury or wrongful death 
unless its terms so provide
 but it reduces the recovery on any claim against the others to the extent of any amount stated in the release or the covenant, or in the amount of the consideration actually paid for it, whichever is greater."  (Emphasis added.) 740 ILCS 100/2 (West 1996).  

Plaintiffs do not claim that the provisions of section 2(c) of the Act apply where, as here, liability is predicated upon a breach of fiduciary duty.  Clearly, the Act does not apply.  
American Environmental, Inc. v. 3-J Co.
, 222 Ill. App. 3d 242, 247, 583 N.E.2d 649 (1991); 
Giordano v. Morgan
, 197 Ill. App. 3d 543, 549, 554 N.E.2d 810 (1990); 
Hartigan
, 189 Ill. App. 3d at 213.  Rather, plaintiffs argue that the Act completely eviscerated the common law rule and that the modern approach is to permit the release only of those parties identified in the release.  We disagree.  

Statutes which are in derogation of the common law will be strictly construed and nothing will be read into such statutes by intendment or implication. 
 Even if a statute is remedial in nature, if it is in derogation of the common law, it will be strictly construed when determining which persons come within its coverage.  
Thus, the meaning of a statute and the extent to which it changes the common law will not be extended beyond that which the language of the statute absolutely requires by its express terms or by necessary implication.   
In re W.W.
, 97 Ill. 2d 53, 57, 454 N.E.2d 207 (1983); 
Malfeo v. Larson
, 208 Ill. App. 3d 418, 424, 567 N.E.2d 364 (1990). 

By its own terms, section 2(c) of the Act governs releases given to "persons liable in tort" for the same injury.  Consistent therewith, our supreme court has stated that the Act was intended to abolish the rule that produced an involuntary discharge of "joint tortfeasors".  
Alsup
, 101 Ill. 2d at 201.  Significantly, at the time the Act was adopted, the common law rule had been applied outside of the tort area to co-obligors on a contract.  See 
Clark
, 185 Ill. 227; 
Parmelee
, 44 Ill. 405.   The Act, however, does not direct itself to co-obligors, to persons liable in contract, or to wrongdoers liable on any theory other than tort.   Accordingly, based on the rule of strict construction, we find that the Act has abolished the common law rule only as to certain tortfeasors and that the rule otherwise survives.
(footnote: 1) 

Plaintiffs maintain that even if the common law rule has survived in some limited fashion, it does not apply in breach of fiduciary duty cases, which are governed by the substantive laws of agency, contract, and equity.  
Kinzer v. City of Chicago
, 128 Ill. 2d 437, 445, 539 N.E.2d 1216 (1989).  Citing 
McCormick
, defendant asserts that the common law rule does apply in cases of breach of fiduciary duty.

In 
McCormick
, the common law rule was applied to release a breach of fiduciary duty claim against a co-trustee not identified by name in the release of the other co-trustee.  Because the liability of co-trustees is joint and several, the court applied the same legal principals that governed the liability of joint tortfeasors
 at common law, 
i.e.
, the release of one joint tortfeasor is the release of all, even though the others were not specifically named in the release.  
McCormick
, 180 Ill. App. 3d at 184.  This principal, the court explained, "applied to those currently liable for a single indivisible injury as well as those that were technically joint tortfeasors."  
McCormick
, 180 Ill. App. 3d at 184. 

Unlike the co-trustees in 
McCormick
, defendant and Burton shared no common fiduciary relationship with plaintiffs akin to the fiduciary relationship shared by co-trustees.  Whereas defendant owed plaintiffs a fiduciary duty as their corporate accountant, Burton owed plaintiffs a fiduciary duty as a fellow officer and director.  

Although 
McCormick
 does not address the particular situation present here, it is instructive in that it removes any doubt as to whether a breach of fiduciary duty case is necessarily outside the scope of the common law rule.  It is not.  This conclusion is buttressed by the fact that breach of fiduciary duty cases are governed, in part, by the substantive law of contracts (
Kinzer
, 128 Ill. 2d at 445) and, as noted earlier, the common law rule has been applied in certain contract actions.  See 
Clark
, 185 Ill. 227; 
Parmelee
, 44 Ill. 405.

In addition, 
McCormick
 reaffirms the oft-cited principal that the common law rule applies not only to those who are technically joint tortfeasors, but to those liable for a "single indivisible injury".  
McCormick
, 180 Ill. App. 3d at 184.  See also 
Cram v. Showalter
, 140 Ill. App. 3d 1068, 1072, 489 N.E.2d 892 (1986) ("Just as a release of one joint tortfeasor releases all joint tortfeasors, those concurrently liable for a single indivisible injury are similarly released.")
;  
Schrempf
, 103 Ill. App. 3d at 412 ("critical question then is whether the injury is single and indivisible, and not whether the tortfeasors acted in concert"); 
Alberstett v. Country Mutual Insurance Co.
, 79 Ill. App. 3d 407, 410, 398 N.E.2d 611 (1979) ("rule applies to those concurrently liable for a single indivisible injury, not merely to those who are technically joint tortfeasors"); 
Chapin
, 18 Ill. App. at 50 ("It is enough if they were both liable for the same injury.").

While plaintiffs do not dispute that the common law rule, to the extent it has survived adoption of the Act, is applicable where there is but a single injury, they maintain that such is not the case here.  Plaintiffs argue that defendant's alleged wrongdoing is merely "related" to wrongs allegedly committed by Burton, but that they did not involve the same single injury.  On the one hand, Burton drew excess salary and advances in breach of his fiduciary duty as an officer and director of the corporations.  On the other hand, defendant failed to inform plaintiffs of these transactions in breach of his fiduciary duty as plaintiffs' corporate accountant.

Certainly it is possible, if not expected, that the breach of two different fiduciary obligations will inflict separate and distinct injuries and losses.  Here, however, the 
only
 loss alleged by plaintiffs is the excess salary and advances obtained by Burton.  Plaintiffs alleged no different or additional loss suffered as a result of defendant's conduct.  Nor did plaintiffs allege that defendant retained any portion of the excess salary and advances, or that defendant otherwise profited at their expense.  Rather, the allegations make clear that plaintiffs seek to recover in this case the very same monies they sought to recover against Burton in the earlier litigation.

Based on plaintiffs' allegations, we conclude that the loss in this case is identical and inseparable from the loss in the earlier suit, which was settled.  Accordingly, the common law rule applies, and the unqualified release of plaintiffs' claims against Burton also released defendant.  See 
Buchbinder v. Register
, 634 F.2d 327 (6th Cir. 1980) (under common law rule, release of fiduciary also operated to release claim against accountant whose gross negligence allegedly permitted fiduciary to invade the corpus of the trust).

Plaintiffs argue that the 
intention of the parties to the release controls and only those persons specifically identified therein should be released.  This argument was rejected by our supreme court in 
Porter
, and again by this court in 
McCormick
.  As we explained:

"Although the intention of the parties controls the scope and extent of the Release (
Schrempf v. New England Mutual Life Insurance Co.
 (1982), 103 Ill. App. 3d 408, 431 N.E.2d 402), the intent examined is whether it is intended as absolute and unconditional, not whether it is intended to release all joint tortfeasors. (
Porter v. Ford Motor Co.
 (1983), 96 Ill. 2d 190, 449 N.E.2d 827.) Accordingly, [plaintiff's] argument as to his intent to limit the release to [one trustee] is irrelevant."  
McCormick
, 180 Ill. App. 3d at 184.

The relevant events in 
Porter
 and 
McCormick
 preceded the effective date of the Act, and those courts did not, therefore, need to consider what effect, if any, the provisions of the Act would have had on their rulings.  
Porter
, 96 Ill. 2d at 196.  
However, because we have already determined that the Act did not completely eviscerate the common law rule, we see no reason to depart from the principals set forth by our supreme court in 
Porter
, and applied by this court in 
McCormick
.  

 The language of the release executed by plaintiffs is unconditional and absolute as to Burton, and plaintiffs do not contend otherwise.  The release contains no reservation of rights with respect to claims against defendant in particular, or against third parties in general.  Accordingly, the release must be construed as a release of all wrongdoers liable for the single loss sustained by plaintiffs, whether or not plaintiffs were ignorant that this would be its legal effect.  See 
Porter
, 96 Ill. 2d at 194-95.  

A review of 
Alsup
 and 
Diamond Headache Clinic
, which plaintiffs contend embody the modern approach, does not persuade us otherwise.   In 
Alsup
, our supreme court considered whether section 2(c) of the Act requires a release to name or specifically identify another tortfeasor in order to discharge that tortfeasor from liability.  The court held that tortfeasors, other than the one or ones who bargained for the release, will not be discharged unless they are specifically identified in the release.  The court did not consider the issue we address--

whether, following adoption of the Act, the common law rule is applicable in a breach of fiduciary duty case.

In 
Diamond Headache Clinic
, plaintiff sued Mercedes-Benz and Loeber Motors for breaches of the warranties of merchantability and fitness for a particular purpose in connection with plaintiff's purchase of a defective automobile.  Plaintiff further sued Loeber Motors for negligent repair.  The trial court ruled that plaintiff's release of all claims against Mercedes-

Benz also released plaintiff's claims against Loeber Motors.  On appeal, the trial court's grant of summary judgment in favor of Loeber Motors was reversed.   

The court examined the propriety of the circuit court's order focusing first on the intent of the plaintiff, which it found was in dispute.  However, the court also considered the effect of the release under the "well established" law that "a full and unconditional release of one of several co-obligors on a joint obligation also discharges the other co-obligor."  
Diamond Headache Clinic
, 172 Ill. App. 3d at 369.   The court found that the plaintiff alleged separate and different injuries resulting from the independent acts of defendants and presumably, therefore, the common law rule was not applicable in this circumstance.  We do not view 
Diamond Headache Clinic
 as a departure from the rule of law set forth in 
Porter
.

For the foregoing reasons, we answer the certified question in the affirmative.  We thus reverse the order of the circuit court denying defendant's motion for summary judgment as to count I of plaintiffs' first amended complaint and grant summary judgment to defendant.

Certified question answered; order reversed in part.

FOOTNOTES
1:     
Not all tortfeasors come within the purview of the Act.  See 
Gerill Corp.
, 128 Ill. 2d at 206 (intentional tortfeasors not entitled to contribution under the Act).  Thus, the common law rule may survive as to certain torts.  This issue, however, is not before the court.