# Illinois Official Reports

## Appellate Court

*Johnson v. Filler*, 2018 IL App (2d) 170923

| | |
|---|---|
| Appellate Court Caption | LARRY JOHNSON, MARJORIE MOORE, and STEVEN JOHNSON, Plaintiffs, v. JAY K. FILLER, FILLER AND ASSOCIATES, DAVID O'BRIEN, JAMES SCHULZ JR., and CAROLYN SCHULZ and JULIE SPIERS, Individually and as Executors and Beneficiaries of a Purported Last Will and Testament of Lawrence A. Johnson, Deceased, Defendants (Steven Johnson, Plaintiff-Appellant; Jay K. Filler and Filler and Associates, Defendants-Appellees). |
| District & No. | Second District<br>Docket No. 2-17-0923 |
| Filed<br>Rehearing denied | August 2, 2018<br>August 31, 2018 |
| Decision Under Review | Appeal from the Circuit Court of McHenry County, No. 15-L-163; the Hon. Michael A. Caldwell, Judge, presiding. |
| Judgment | Affirmed. |
| Counsel on Appeal | Peter Thomas Smith and Jeffrey A. Meyer, of Klein, Stoddard, Buck & Lewis, LLC, of Sycamore, for appellant.<br><br>Daniel F. Konicek and Amanda J. Hamilton, of Konicek & Dillon, P.C., of Geneva, for appellees. |

Panel    JUSTICE SCHOSTOK delivered the judgment of the court, with opinion.
Justices Zenoff and Jorgensen concurred in the judgment and opinion.

**OPINION**

¶ 1    This case involves a family of five children whose parents owned substantial amounts of farmland in McHenry County. The mother preceded the father in death. After the father died, three children filed a probate action (against the other siblings, an accountant, and an attorney) contesting the father's will and trust and asserting other civil claims. The subject of this appeal is a claim for aiding and abetting tortious interference with inheritance expectancy, which was filed by one of the children, Steven Johnson, against the attorney, Jay K. Filler, who prepared the will and trust that was the subject of the probate action. Following a settlement between the siblings in the probate action, the trial court dismissed Steven's claim against Filler. Steven appeals from that order. We affirm.

¶ 2                                    BACKGROUND

¶ 3    Lawrence and Ruth Johnson had five children: Larry, Marjorie, Steven, Carolyn, and Julie. Lawrence and Ruth each owned a one-half interest as tenants in common in 410 acres of farmland in McHenry County, known as Johnson Farms, which they had titled in a trust. A 116-acre parcel was known as the "Home Farm." Ruth died on July 28, 2001. Under the terms of Ruth's trust, she left her one-half interest in Johnson Farms to her children with a life estate for Lawrence. Ruth's trust further specified that, upon Lawrence's death, Steven would own Ruth's one-half interest in the Home Farm, and the remaining interest in Johnson Farms was to be distributed to all five children equally. Ruth's trust named Lawrence and Carolyn as cotrustees. Ruth's trust named Lawrence as executor and "Carolyn *** and *** Larry *** each in the order named, as [successor] executor."

¶ 4    The record indicates that Lawrence had a will dated October 17, 2011. In that will, there was a provision titled "Article 2, Gifts on My Death." Under section 2.1 of article 2, titled "Gifts of Tangible Personal Property," Lawrence bequeathed all his tangible personal property in equal shares to all his children. Under section 2.2, titled "Gift of Balance," Lawrence, after making other specific bequests, stated as follows:

"C. I give the balance of my estate equally among my children Julie ***, Carolyn ***, Marjorie ***, and Larry ***.

D. I have intentionally not provided for distribution under this Will for my son Steven ***, as I have made substantial gifts to him over the years and *** feel that he has been fairly and adequately compensated."

¶ 5    On June 11, 2013, Lawrence executed a quitclaim deed, drafted by Filler, conveying his one-half interest in the Home Farm to his grandson, James Schulz Jr. (Carolyn's son). At about the same time, Lawrence attempted to sell Ruth's one-half interest in the Home Farm, conveyed under Ruth's trust, to James. The record contains two letters related to this attempted conveyance. In a June 17, 2013, letter from Filler to Larry, Filler stated that he had multiple conversations with Lawrence regarding the sale of the Home Farm to James, that

- 2 -

there was a *bona fide* appraisal of Ruth's one-half interest, and that Lawrence was requesting that Larry either consent to the sale or resign as cotrustee of Ruth's trust. In a June 27, 2013, letter from Filler to Larry's attorney, Filler relied on language in Ruth's trust that gave the trustees the power to sell any real property contained in the trust. Filler stated in the letter that, under that provision, he "believe[d] the Trustees do, in fact, have power to sell the property as proposed." Filler also stated that, since the other one-half interest (Lawrence's interest) was not going to be conveyed to Steven, the sale of Ruth's share to James was "a logical step to avoid future conflict." However, Larry did not agree, and the sale was never consummated.

¶ 6    In a last will and testament dated August 22, 2013, drafted by Filler, Lawrence revoked any prior wills and codicils. Lawrence then bequeathed all his farming equipment and machinery to James. All the remaining personal property was bequeathed to Julie and Carolyn. In his trust, also dated August 22, 2013, Lawrence, after making other specific bequests, left the remainder of his trust estate to Julie and Carolyn, and "intentionally omitted any distribution hereunder to my children, Marjorie *** , Larry *** , and Steven, as they have chosen lifestyles apart from mine." Lawrence died on October 2, 2014.

¶ 7    On May 22, 2015, Larry, Marjorie, and Steven filed a complaint against Carolyn, Julie, and James, alleging claims based on undue influence, tortious interference with expectancy, aiding and abetting tortious interference with expectancy, conspiracy, breach of fiduciary duty, rescission, and constructive fraud. The complaint also alleged claims for aiding and abetting tortious interference with inheritance expectancy and legal malpractice against Filler. Following motions and argument, the complaint, as well as first and second amended complaints, were dismissed.

¶ 8    About the same time that Steven filed his May 2015 complaint, he filed a petition in a consolidated probate action, challenging the validity of the 2013 will and trust. On February 28, 2017, Steven entered into a settlement agreement with Carolyn, Julie, and James and dismissed with prejudice his petition in the probate action and his claims in the present action against Carolyn, Julie, and James. However, the agreement specifically reserved Steven's claims against Filler and David O'Brien, Lawrence's accountant and financial adviser.

¶ 9    On February 10, 2017, Steven filed a third amended complaint, separate from Larry and Marjorie, the dismissal of which is the subject of this appeal. Steven's third amended complaint stated claims against Filler and O'Brien. This appeal concerns count I, a claim against Filler for aiding and abetting Carolyn's tortious interference with inheritance expectancy. Specifically, Steven alleged that Carolyn tortiously interfered with his inheritance expectancy by exerting undue influence over Lawrence, causing Lawrence to (1) convey his one-half interest in the Home Farm to James, (2) execute the 2013 will that disinherited Steven, and (3) attempt to sell Ruth's interest in the Home Farm to James. Steven alleged that Filler aided and abetted Carolyn's tortious interference with his inheritance by (1) drafting the 2013 will, (2) preparing the quitclaim deed granting Lawrence's one-half interest in the Home Farm to James, and (3) preparing the paperwork related to the attempt to sell Ruth's one-half interest in the Home Farm to James.

¶ 10    On February 24, 2017, Filler filed a motion to dismiss the third amended complaint pursuant to section 2-615 of the Code of Civil Procedure (Code) (735 ILCS 5/2-615 (West 2016)). Filler argued that damages was an element of a claim for tortious interference with inheritance expectancy and that Steven could not prove damages because he had already

been completely disinherited in the 2011 will. Filler also adopted arguments that he set forth in a motion to dismiss the claims against him in a third amended complaint filed by Larry and Marjorie. The adopted arguments were that Steven failed to state a cause of action where he did not allege either that Filler knew that Carolyn was exerting undue influence over Lawrence or that Filler knowingly assisted her in the alleged activity. Specifically, there were no facts showing how Filler would have acquired the requisite knowledge or how Filler knew that Lawrence was susceptible to undue influence. Additionally, Filler argued that the complaint should be dismissed because there were no factual allegations that Carolyn engaged in any conduct or made any statements to Lawrence that would have coerced him into executing the 2013 will. Finally, Filler argued that dismissal was also appropriate because the settlement in the probate case precluded the present claim.

¶ 11    On March 28, 2017, Steven filed a response to Filler's motion to dismiss count I of his third amended complaint. Steven argued that his complaint adequately alleged the elements of his claim. Steven further argued that the probate settlement did not preclude his claim because he specifically reserved the right to pursue it. Steven also disagreed with Filler's assertion that Steven was disinherited in the 2011 will. Steven argued that, under the 2011 will, he was still entitled to a one-fifth share of his father's personal property.

¶ 12    On April 25, 2017, a hearing was held on Filler's motion to dismiss. A transcript of that hearing is not included in the record on appeal. However, following the hearing, the trial court took the matter under advisement. On July 18, 2017, the trial court granted the dismissal on three different bases. First, the trial court found that Steven failed to state a claim because there were no allegations that Filler was directly responsible for any undue influence, fraud, or duress. Next, relying on *Cherney v. Soldinger*, 299 Ill. App. 3d 1066 (1998), the trial court found that the claim was barred by the settlement in the probate case. Finally, the trial court found that Filler owed no duty because what happened to Steven occurred two years prior to Filler's involvement in the case—an implicit finding that Steven was completely disinherited in the 2011 will. The trial court subsequently denied Steven's motion to reconsider and entered a finding under Illinois Supreme Court Rule 304(a) (eff. Mar. 8, 2016) that there was no just reason to delay enforcement or appeal of the order. Thereafter, Steven filed a timely notice of appeal.

¶ 13                                      ANALYSIS

¶ 14    On appeal, Steven argues that the trial court erred in granting Filler's motion to dismiss count I of his third amended complaint. Specifically, Steven argues that the trial court erred in finding that (1) count I should be dismissed for failing to allege that Filler himself committed acts of undue influence, fraud, or duress; (2) the claim was barred by the settlement agreement in the probate case; and (3) Steven was disinherited in the 2011 will. Finally, Steven argues that his claim sufficiently stated all the elements of his cause of action. We will first address this last argument, as the issue is dispositive of this appeal.

¶ 15    A motion to dismiss under section 2-615 of the Code (735 ILCS 5/2-615 (West 2016)) challenges the legal sufficiency of a complaint, based on facial defects of the complaint. *Borowiec v. Gateway 2000, Inc.*, 209 Ill. 2d 376, 382 (2004). A trial court should grant a section 2-615 motion to dismiss only if "it is clearly apparent that no set of facts can be proved that would entitle the plaintiff to relief." *Pooh-Bah Enterprises, Inc. v. County of Cook*, 232 Ill. 2d 463, 473 (2009). A court must accept as "true all well-pleaded facts and all

reasonable inferences that may be drawn from those facts." *Id.* This court conducts a *de novo* review of a trial court's ruling on a motion to dismiss. *U.S. Bank National Ass'n v. Clark*, 216 Ill. 2d 334, 342 (2005). While allegations in the complaint are viewed in the light most favorable to the plaintiff, the decision to dismiss a case may be affirmed on any basis contained in the record, "whether or not the trial court relied on that basis or its reasoning was correct." *Erie Insurance Exchange v. Compeve Corp.*, 2015 IL App (1st) 142508, ¶ 16.

¶ 16    In count I, Steven alleged that Filler aided and abetted Carolyn's tortious interference with his inheritance. In order to state a claim for aiding and abetting, a plaintiff must allege the following: (1) the party whom the defendant aided performed a wrongful act that caused an injury; (2) the defendant was generally aware of his role as part of the overall or tortious activity when he provided the assistance; and (3) the defendant knowingly and substantially assisted the principal violation. *Wolf v. Liberis*, 153 Ill. App. 3d 488, 496 (1987). A plaintiff cannot merely paraphrase the elements of a cause of action in conclusory terms but must plead specific facts to support the cause of action. *Thornwood, Inc. v. Jenner & Block*, 344 Ill. App. 3d 15, 29 (2003).

¶ 17    In *Thornwood*, the reviewing court reversed the dismissal of a claim of aiding and abetting a breach of fiduciary duty. *Id.* at 29-30. The plaintiff, Thomas Thornton, had sued the defendant law firm, Jenner & Block, as well as his ex-business partner, James Follensbee, after he had been excluded from a profitable business deal. *Id.* at 18. Specifically, Thornton and Follensbee had formed a partnership to develop Thornton's farm as a residential community and golf course. *Id.* Initial attempts by Follensbee to work with the Professional Golfers Association (PGA) to have the course developed as an official PGA course, which would have significantly increased the value of the parties' investments, were unsuccessful. *Id.* at 19. After Follensbee had notified Thornton that the PGA's " 'involvement in the development project was not feasible,' " Follensbee secretly continued to negotiate a deal. *Id.* Follensbee retained Jenner & Block to help him buy out Thornton's partnership interest and negotiate with the PGA and other investors. *Id.* at 20. Jenner & Block drafted an agreement under which Follensbee acquired Thornton's interest in the partnership. *Id.* Four years later, Thornton found out about Follensbee's negotiations and brought suit. *Id.* at 21.

¶ 18    In discussing the requirements to state a claim against Jenner & Block for aiding and abetting its client's breach of fiduciary duty, the court observed:

> "Certainly *** mere receipt of copies of letters authored by Follensbee, which expose his breach of fiduciary duty, probably does not constitute aiding and abetting under Illinois law. Here, however, Thornton alleges more. He alleges that Jenner & Block aided and abetted by knowingly and substantially assisting Follensbee in breaching his fiduciary duty by[:] (1) communicating the competitive advantages available to the Partnership *** to other parties, but specifically not to Thornton; (2) expressing Follensbee's interest in purchasing Thornton's interest in the Partnership and negotiating the purchase of that interest without disclosing to Thornton the continued negotiations ***; (3) reviewing and counseling Follensbee with regard to the production of investment offering memoranda, financial projections, and marketing literature, which purposely failed to identify Thornton as a partner; and (4) drafting, negotiating, reviewing, and executing documents, *** relating to the purchase of Thornton's interest *** with knowledge that Thornton was not aware of [negotiations with the PGA]. All of these acts are alleged to have been perpetrated by Jenner &

Block while it had knowledge that Thornton and Follensbee were partners, that Follensbee had a duty to disclose [plans] to Thornton, and that Follensbee did not disclose [plans] to Thornton despite having the opportunity and duty to do so." *Id.* at 29.

The *Thornwood* complaint thus adequately alleged that Jenner & Block (1) had specific knowledge of the tortious acts Follensbee was committing against Thornton, (2) knew that Thornton was not aware of those tortious acts, and (3) was actively involved in both hiding and furthering those tortious acts.

¶ 19        Here, count I of Steven's third amended complaint failed to state a cause of action against Filler for aiding and abetting the alleged tortious interference with his inheritance by Carolyn's undue influence. Steven alleged that Filler (1) knew that Lawrence was "susceptible" to undue influence, (2) "should have known" that the conveyance of Lawrence's share in the Home Farm to James was "presumptively fraudulent," and (3) "should have made a reasonable and good faith determination as to whether Carolyn was unduly influencing Lawrence." Steven also alleged that Filler should have obtained "independent and competent counsel for Lawrence" to determine if the desire to change the will was the result of undue influence. With respect to the attempt to sell Ruth's one-half interest in the Home Farm to James, Steven alleged that Filler, in the June 27 letter, set forth a false legal opinion that Larry, as a trustee of Ruth's trust, could sell Ruth's interest in the Home Farm.

¶ 20        These allegations do not show that Filler knew of the undue influence and substantially assisted it. In fact, the allegations imply that Filler did not know of any undue influence but would have found out if he had investigated. Further, unlike in *Thornwood*, there are no allegations that Filler actively participated in the alleged tortious activity. In *Thornwood*, it was alleged that Jenner & Block actively concealed information from Thornton in order to further the tortious activity. Here, although Filler drafted the 2013 will and other documents requested by Lawrence, there are no allegations that Filler actively hid information from or made any misrepresentations to either Lawrence or any of the siblings in order to further the alleged undue influence. Although Steven alleged that Filler set forth a false legal opinion regarding the ability of the trustees of Ruth's trust to sell Ruth's interest in the Home Farm, the June 27 letter demonstrates no more than Filler's opinion as to the trustees' power under Ruth's trust. If in fact this legal opinion was erroneous, we note that the letter was addressed to Larry's attorney, not to Larry or Lawrence directly.

¶ 21        Steven argues that "should have known" is sufficient to allege a claim for aiding and abetting. However, recent cases, such as *Thornwood*, refer to the standard of actual knowledge, not constructive knowledge. *Id.* at 27. Additionally, other courts have rejected the notion that constructive knowledge is sufficient to support a claim for aiding and abetting. *Barker v. Henderson, Franklin, Starnes & Holt*, 797 F.2d 490, 497 (7th Cir. 1986) ("A plaintiff's case against an aider, abetter, or conspirator may not rest on a bare inference that the defendant 'must have had' knowledge of the facts. The plaintiff must support the inference with some reason to conclude that the defendant has thrown in his lot with the primary violators."); *Global Cash Network, Inc. v. Worldpay, US, Inc.*, 148 F. Supp. 3d 716, 724 (N.D. Ill. 2015) (that a defendant should have known that something was improper "is a far cry from knowingly assisting" with tortious activity). Here, even if there were

circumstances such that Filler should have suspected undue influence, there are still no allegations that Filler substantially assisted it.

¶ 22 Steven cites *White v. Moran*, 134 Ill. App. 480 (1907), for the proposition that the knowledge necessary for aiding and abetting can be either actual or constructive. In that case, the court stated:

> "If [defendants] had actual or constructive knowledge of the fraudulent character of the enterprise, and with such knowledge, aided and abetted in its furtherance, and by means of false and untrue representations induced appellee to invest therein, they were *in pari delicto* with White in the fraud and deceit practiced and equally liable with him for any damages occasioned to appellee." *Id.* at 491-92.

¶ 23 We find unpersuasive Steven's reliance on *White*. First, no case has ever cited *White* for the proposition that constructive knowledge of wrongful conduct is sufficient to allege a claim for aiding and abetting. Further, the allegations in *White* were based on actual knowledge. In *White*, it was alleged that the defendants (1) made false representations to further the fraud and deceit of the principal, (2) knew that the representations were false, and (3) made the representations to deceive the plaintiff and induce him to rely on them. *Id.* at 481. In this case, unlike in *White*, there are no allegations that Filler took steps, other than drafting documents requested by his client, to substantially assist the alleged tortious activity.

¶ 24 For the above reasons, we affirm the dismissal of count I of Steven's third amended complaint on the basis that it failed to state a cause of action. We may affirm on any basis appearing in the record, whether or not the trial court relied on that basis. *Erie*, 2015 IL App (1st) 142508, ¶ 16. Accordingly, we need not address Steven's additional contentions relating to the propriety of the trial court's reasons for the dismissal.

¶ 25 In so ruling, we include a note of concern. Although we find that count I failed to state a cause of action, attorneys should be mindful of situations, as in the present case, where an elderly person in the last years of his life requests to disinherit family members and attempts to sell a family member's interest in a property. In such situations, attorneys should proceed with the utmost caution.

¶ 26                                    CONCLUSION

¶ 27 For the foregoing reasons, the judgment of the circuit court of McHenry County is affirmed.

¶ 28 Affirmed.